STEINERT v. VAN AKEN et al.   (No. 6275.)

(Supreme Court, Appellate Division, First Department.   December 11, 1914.)

1. EXECUTION (§ 409*)—SUPPLEMENTARY PROCEEDINGS—RECEIVERS—RIGHTS TO PROPERTY—ACCRUAL.

Where a receiver in supplementary proceedings was appointed July 1, 1909, and the receivership extended to other judgments on the same day, and on the following October 14 and May 21, 1910, respectively, but the date was not shown on which the order in supplementary proceedings was served, or when the warrant, if any, requiring the arrest of the judgment debtor was served, required by Code Civ. Proc. §§ 2468, 2469, to enable a receiver to claim that his title as receiver related further back than the date of his appointment, the date of appointment fixed the time when his right or claim to the judgment debtor's property accrued.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 1173–1179; Dec. Dig. § 409.*]

2. EXECUTION (§ 409*)—SUPPLEMENTARY PROCEEDINGS—RECEIVERS—TITLE.

A receiver in supplementary proceedings takes the legal title to all the personal property of the judgment debtor not exempt from execution, but . only for the benefit of the judgment creditors for whom he is appointed receiver, and of other judgment creditors to whose judgments the receivership may be extended, subject to any rights or defenses existing against the judgment debtor at the time title vests in the receiver.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 1173–1179; Dec. Dig. § 409.*]

3. EXECUTION (§ 411*)—SUPPLEMENTARY PROCEEDINGS—RECEIVERS—ACTIONS —DEFENSES.

Where a judgment debtor had had a claim against the administratrix of his deceased wife for a distributive share of the estate, a receiver, appointed for such debtor in supplementary proceedings, succeeded to the debtor's right to sue to recover such property and·to sue the sureties on the bond of the administratrix, subject, however, to any defense that the sureties had against the debtor, arising out of the circumstances attending their becoming sureties.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 1183–1190; Dec. Dig. § 411.*]

4. EXECUTION (§ 409*)—SUPPLEMENTARY PROCEEDINGS—RECEIVERS—SURPLUS.

A receiver in supplementary proceedings is not a general receiver for the benefit of all creditors, and, though he takes title to all the judgment debtor's property not exempt from execution, he holds any surplus not required to satisfy the judgment of the creditor for whom he was appointed, and any other judgments to which the receivership may be ex-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tended, for the benefit of the judgment debtor, to whom he must account therefor.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 1173–1179; Dec. Dig. § 409.*]

5. EXECUTION (§ 409*)—SUPPLEMENTARY PROCEEDINGS—RECEIVERSHIP—POSSESSION OF PROPERTY.

A receiver in supplementary proceedings need not reduce to his possession more than sufficient property to pay the claims of those he represents and costs, and the court may properly stay him from taking possession of more than sufficient property for that purpose.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 1173–1179; Dec. Dig. § 409.*]

6. EXECUTION (§ 411*)—SUPPLEMENTARY PROCEEDINGS—CLAIMS—TITLE—DEFENSES.

Since all interest of a judgment debtor in the estate of his deceased wife passed to his receiver in supplementary proceedings on the date of the receiver's appointment, as provided by Code Civ. Proc. § 2468, the sufficiency of any defenses, except as to any equity the debtor might have in the property passing to the receiver, must be determined with reference to the debtor's rights as they existed at that time, at least so far as the property was necessary to pay the judgments within the receivership.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 1183–1190; Dec. Dig. § 411.*]

7. EXECUTORS AND ADMINISTRATORS (§ 535*)—ACCOUNTING—BOND—LIABILITY OF SURETIES.

Sureties on an administrator's bond are his privies, and are concluded by any lawful order or decree of the Surrogate's Court, if obtained without collusion between the administrator and the creditors or next of kin; but the sureties in general are not concluded from questioning a surrogate's decree, in so far as it is in favor of any creditor or next of kin who, by collusion with the administrator or through fraud, have been instrumental in obtaining the decree.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2462–2475, 2503; Dec. Dig. § 535.*]

8. EXECUTORS AND ADMINISTRATORS (§ 535*)—ADMINISTRATRIX'S BOND—ACTIONS—DEFENSES—FRAUD.

Where a receiver in supplementary proceedings on a judgment debtor sought to enforce a surrogate's decree surcharging the administratrix of the debtor's deceased wife for an amount distributable to the debtor, by suing on the administrator's bond, the fact that the sureties were induced to become such by the debtor's false and fraudulent representations that the estate was solvent, that it was approximately worth $10,000, with liabilities of $9,000, and that the balance belonged to the debtor, when in fact both he and the administratrix then knew that the assets amounted to over $20,000, and that, had the sureties known this, they would not have consented to become sureties, and one of them could not have qualified, all of which occurred nearly four months before the receiver's appointment, was a sufficient defense.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2462–2475, 2503; Dec. Dig. § 535.*]

9. EXECUTORS AND ADMINISTRATORS (§ 471*)—ACCOUNTING—PARTIES—SURETIES.

Sureties on an administratrix's bond are entitled to notice of a proceeding to settle her accounts, as provided by Code Civ. Proc. § 2728.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2018–2024; Dec. Dig. § 471.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**10. EXECUTORS AND ADMINISTRATORS (§ 535*)—ACTION ON BOND—SURROGATE'S DECREE—COLLATERAL ATTACK.**

Where a surrogate's decree surcharged the administratrix in favor of a distributee, and suit was brought by the distributee's receiver in supplementary proceedings to enforce the decree against the administratrix's sureties, a defense by them that they were induced to become sureties by the fraud of the distributee was not objectionable as a collateral attack on the surrogate's decree.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2462–2475, 2503; Dec. Dig. § 535.*]

**11. EXECUTORS AND ADMINISTRATORS (§ 537*)—ADMINISTRATRIX'S BOND—DEFENSES.**

In a suit on an administratrix's bond by the receiver in supplementary proceedings of a distributee, the fact that the administratrix, after appointment, married the distributee and petitioned for a settlement of her accounts in her former name, concealing the marriage, and that on her death an application for letters of administration on her estate was made, in which the fact that she was married was also concealed, constituted no defense.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2453, 2485–2581; Dec. Dig. § 537.*]

**12. EXECUTORS AND ADMINISTRATORS (§ 535*)—ACTION ON BOND—ACCOUNTING—CONCLUSIVENESS—DEFENSES.**

Since sureties on the bond of an administratrix are parties to a proceeding to settle her accounts, and are bound by the settlement, the fact that they were not cited and did not appear before a referee appointed to hear objections to the administratrix's accounts was no defense to their liability on the bond.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2462–2475, 2503; Dec. Dig. § 535.*]

**13. EXECUTORS AND ADMINISTRATORS (§ 537*)—RIGHTS OF DISTRIBUTEE—ACTION ON BOND—DEFENSES.**

Where, in a suit by a distributee's receiver in supplementary proceedings against the sureties on the bond of the administratrix, the answer did not allege that the administratrix's accounts were surcharged with the value of a saloon previously operated by the distributee and his wife, or with any other assets alleged to have been fraudulently disposed of by the administratrix, and there was no allegation as to when such alleged fraudulent acts were done by the distributee, and it was not shown that such acts were not after plaintiff's title as receiver became vested, they were no defense.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2453, 2485–2581; Dec. Dig. § 537.*]

**14. EXECUTORS AND ADMINISTRATORS (§ 537*)—ACTION ON BOND—DEFENSES—WANT OF JURISDICTION.**

In an action against sureties on the bond of an administratrix to recover a distributee's share of the estate under the surrogate's decree settling the administratrix's accounts, a defense that the Surrogate's Court was without jurisdiction to make the decree, without alleging any facts showing want of jurisdiction, was unavailable.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2453, 2485–2581; Dec. Dig. § 537.*]

**15. EXECUTORS AND ADMINISTRATORS (§ 537*)—ACTION ON BOND—DEFENSES.**

Where, in a suit by the receiver in supplementary proceedings of a distributee of an estate against the sureties on the bond of the administratrix, defendants alleged as a complete defense fraud of the administratrix and the distributee in disposing of a saloon, charging that the fraud and conspiracy was wholly conceived and partly executed prior to the time when the liens were created which plaintiff was seeking to enforce.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

but it was not alleged that the administratrix was surcharged on account of the alleged fraud, the defense was insufficient, both for that reason and because, if the conspiracy was executed in part prior to the time the title vested in plaintiff, and that had been alleged, it would constitute but a partial defense, if any, that the decree was based thereon.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2453, 2485–2581; Dec. Dig. § 537.*]

16. EXECUTORS AND ADMINISTRATORS (§ 537*)—ACTION ON BOND—PLEADING— FRAUD—SUPPORTING FACTS.

In a suit against sureties on an administratrix's bond, an alleged defense of fraud and conspiracy between a distributee, in whose right plaintiff sued as receiver, and the administratrix, without any facts showing a fraudulent conspiracy resulting in or affecting the surrogate's decree settling the administratrix's accounts on which·the suit was based, was insufficient.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2453, 2485–2581; Dec. Dig. § 537.*]

Appeal from Special Term, New York County.

Action by Henry N. Steinert, as receiver, against Charles H. Van Aken and another. From a Special Term order denying plaintiff's motion for judgment on the pleadings, he appeals. Affirmed.

See, also, 161 App. Div. 933, 146 N. Y. Supp. 1113.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

George W. Carr, of New York City, for appellant.

George B. Class, of New York City, for respondents.

LAUGHLIN, J. After the defendants served an amended answer herein, plaintiff moved for·judgment on the pleadings. The motion was granted, and the order was affirmed by this court without opinion; the writer, however, filing a dissenting opinion. Steinert v. Van Aken, 160 App. Div. 921, 145 N. Y. Supp. 760. But leave was granted defendants to further amend their answer, and pursuant thereto they served a second amended answer. Thereupon plaintiff again moved for judgment on the pleadings, and the motion was granted, and an opinion was written at Special Term by Mr. Justice Greenbaum, pointing out the insufficiency of the allegations of the answer to constitute the defenses attempted to be pleaded, and leave was granted to defendants to further amend. The defendants thereupon served a third amended answer, and another motion for judgment on the pleadings followed, which was denied by Mr. Justice Guy, who filed an opinion, and this is plaintiff's appeal therefrom.

The defendants have omitted from their present pleading two material defenses, which they attempted to plead in the first amended answer, and which, on the appeal from the order granting the motion for. judgment on the pleadings, the writer in a dissenting opinion endeavored to sustain as sufficient. The action is based upon a decree of the Surrogate's Court settling the accounts of an administratrix, for whom the defendants were sureties, and requiring her to pay over to the plaintiff $19,102.38, with interest thereon from November 17, 1911, and $2,977.63 costs and disbursements and allowances, and the defend-

ants are sued as such sureties on the official bond of the administratrix. In proceedings supplementary to execution against one Wallace, the plaintiff was appointed receiver, and the decree directed the payment of the money to him in the right of Wallace, who, it evidently appeared before the surrogate, was entitled to the fund on the theory that he was the husband of the decedent and took it under the statute of distributions.

In the first amended answer the defendants attempted to allege a defense to the effect that Wallace was not the husband of the decedent and was not entitled to share in the estate of the decedent, and that by false and fraudulent representations to the effect that he was her husband the Surrogate's Court was deceived, and that the decree, in so far as it directs the payment by the administratrix to the plaintiff, was predicated upon this fraud. The defendants in that pleading further attempted to allege as a defense that a brother of the decedent was not cited, and that therefore the decree would not be binding upon him, and that the sureties would remain liable to him. By the pleading now before the court, the defendants have abandoned those defenses. There is no allegation in the last amended answer to the effect that the decedent's brother was not duly cited, or that Wallace was not the husband of the decedent, or that the Surrogate's Court was deceived with respect to his being her husband. There is a denial of any knowledge or information sufficient to form a belief as to whether he was her husband, but in the fifth defense it is alleged that it was found by the referee, appointed by the surrogate to pass upon the objections interposed to the account filed by the administratrix, that Wallace was the husband of the decedent, and the defendants in that defense now allege that fact, among other facts, as a defense to the action.

The last amended answer purports to plead nine separate defenses, the nature of which is that defendants were induced to become sureties on the bond of the administratrix through false and fraudulent representations made by her and Wallace, acting in concert and in furtherance of a conspiracy between them to wrongfully dispose of the estate and subject the defendants as such sureties to liability for Wallace's debts to the extent of his interest in the estate; that in furtherance of the conspiracy the administratrix and Wallace fraudulently disposed of the assets of the estate, and fraudulently induced the defendants to waive the issuance and service of a citation on them in the accounting proceeding; that the decree of the Surrogate's Court was brought about by the fraudulent acts of Wallace and the administratrix; that the Surrogate's Court was without jurisdiction on account of the fraud perpetrated upon the defendants with respect to the waiver of citation, and also for the reasons that the waiver was executed by them prior to the commencement of the accounting proceeding, and the decree was predicated upon the setting aside of certain instruments which required the exercise of equity jurisdiction; and that Wallace executed a general release to the defendants, which discharges them from liability.

[1] It appears by the complaint that the first appointment of the plaintiff as receiver was on the 1st day of July, 1909, and the re-

:eivership was extended to another judgment on the same day, and to four others on the 14th day of October thereafter, and to two others on the 21st day of May, 1910. The first of these dates must be taken as the time when the right of claim on the part of Wallace to a distributive share of the estate of the decedent passed to the plaintiff, for the plaintiff fails to show when the order in supplementary proceedings was served, or when a warrant, if any, requiring the arrest of the judgment debtor was served, which would be essential to enable him to claim that the title of the receiver related back of the date of his appointment. See sections 2468, 2469, Code of Civil Procedure.

[2] The decree of the Surrogate's Court requiring the administratrix to pay the money over to the plaintiff was entered on the 13th day of June, 1912. A receiver in supplementary proceedings takes the legal title to all the personal property of the judgment debtor not exempt from execution; but he takes it only for the benefit of the judgment creditors for whom he is appointed receiver, and of other judgment creditors to whose judgments the receivership may be extended, subject, however, to any rights or defenses existing against the judgment debtor at the time title vests in the receiver, or, in other words, he steps into the shoes of the judgment debtor with respect to the personal property. Kennedy v. Thorp, 51 N. Y. 174; Bostwick v. Menck, 40 N. Y. 383; Mandeville v. Avery, 124 N. Y. 376, 26 N. E. 951, 21 Am. St. Rep. 678; Ward v. Petrie, 157 N. Y. 301, 51 N. E. 1002, 68 Am. St. Rep. 790; High on Receivers, § 202, and cases cited; Code of Civil Procedure, § 2468.

[3] The receiver's title to the property of Wallace carried with it any right Wallace had to sue the sureties on the bond of the administratrix, but that right was likewise subject to any defense the sureties had against Wallace arising out of the circumstances attending their becoming sureties. See Merchants' Bank v. Weill, 163 N. Y. 486, 57 N. E. 749, 79 Am. St. Rep. 605.

[4] A receiver in supplementary proceedings, however, is not a general receiver for the benefit of all creditors; and although he is vested with the legal title to all the personal property not exempt from execution, he takes and holds the surplus over and above the amount necessary to satisfy the judgment of the creditor for whom he was appointed, and the other judgments to which the receivership may be extended, for the benefit of the judgment debtor, to whom he must account therefor. Goddard v. Stiles, 90 N. Y. 199, 206; Ward v. Petrie, supra; Lanigan v. Mayor, 70 N. Y. 454. See, also, Matter of Walker, 157 App. Div. 609, 142 N. Y. Supp. 972.

[5] For the reason that the receivership is thus limited, the receiver is not required to reduce to his possession more than sufficient property to pay the claims of those he represents and costs; and inasmuch as he is subject to the orders of the court appointing him, it is within the province of the court to stay him from taking possession of more than sufficient property to satisfy the claims he represents. Bostwick v. Menck, supra; Stephens v. Meriden Britannia Co., 160 N. Y. 178, 183, 54 N. E. 781, 73 Am. St. Rep. 678; Lanigan v. Mayor, supra; Crook v. Findley, 60 How. Prac. 375; Matter of Wilds, 6 Abb. N. C. 307; Goddard v. Stiles, supra.

[6] Any interest which Wallace had in the estate of the decedent passed to the plaintiff on his appointment as receiver the 1st day of July, 1909. Code of Civil Procedure, § 2468. And the sufficiency of the defenses, unless it be with respect to any equity Wallace may have in the property passing to the receiver, is therefore to be determined with respect to the rights of Wallace as they existed at the time. If Wallace had been guilty of fraud at or before the title vested in the receiver, which would have been a defense to an action by him against the sureties for the failure of the administratrix to comply with the decree, that defense is therefore now available as against the plaintiff. It is equally manifest that the rights which became vested in the receiver could not be affected by any subsequent fraud on the part of Wallace, at least in so far as the property is required to satisfy the claims of the judgment creditors, whom the receiver represents. If all the property passing to the receiver should not be required to satisfy the claims of said judgment creditors, then Wallace would be entitled to the surplus remaining, and with respect to that the defendants might have an equitable defense, based on fraud on the part of Wallace subsequent to the time title vested in the receiver; for if they should, on account of their liability on the bond, be required to pay over to the plaintiff more than sufficient to satisfy the claims of said judgment creditors, they might be without remedy. If the plaintiff is suing for more than is needed to satisfy the claims of the judgment creditors represented by him, he is in effect suing for the benefit of Wallace; and if the defendants have a defense against Wallace, even though they have none as against the judgment creditors whom the plaintiff represents, their liability in this action should be confined to an amount sufficient to satisfy the claims of the judgment creditors represented by the plaintiff.

[7] The sureties on the bond of an administrator are his privies, and are concluded by any lawful order or decree of the Surrogate's Court, if obtained without collusion between the administrator and creditors or next of kin. Scofield v. Churchill et al., 72 N. Y. 565; Carr et al. v. Breese et al., 81 N. Y. 584; Power v. Speckman, 126 N. Y. 354, 27 N. E. 474; Deobold v. Oppermann et al., 111 N. Y. 531, 19 N. E. 94, 2 L. R. A. 644, 7 Am. St. Rep. 760; Douglas v. Ferris et al., 138 N. Y. 192–201, 33 N. E. 1041, 34 Am. St. Rep. 435. It would seem to follow from this general rule that the sureties are not concluded from questioning a decree of the Surrogate's Court, in so far as it is in favor of any creditor, or of any of the next of kin, who by collusion with the administrator and through fraud have been instrumental in obtaining the decree. If, therefore, Wallace, instead of the plaintiff, as receiver, were suing the sureties on their liability on the official bond of the administratrix, they would be at liberty to show that, in so far as the decree directs the payment of money to him, it was the result of fraud and collusion between him and the administratrix.

[8] I am also of opinion that they could defend an action brought by Wallace based upon the decree of the Surrogate's Court directing the payment of money to him, upon the ground that they were induced to become sureties through material false representations made by him, at least in so far as the decree is predicated upon a right to share in

the estate which he had at the time he so induced them to become sureties. Such a receiver may bring any action to recover the personal property of the judgment debtor which the latter might have brought; but, since a fraudulent transfer by the judgment debtor is good as against him, a receiver may set it aside only to the extent necessary to satisfy the claims which he represents. Stephens v. Meriden Britannia Co., supra; Bostwick v. Menck, supra. It is to be borne in mind that this is not an action to recover personal property of the judgment debtor. It is an action in the right of Wallace, as the same passed to the receiver, to enforce, for the benefit of the judgment creditors, the liability of the defendants on the bond. It seems to me, therefore, that by analogy the rule which would obtain if this were an action to set aside a fraudulent transfer by Wallace should be applied here, to the extent of not permitting a recovery of more than sufficient to satisfy the claims which the receiver represents, and costs, providing the defendants have a defense as against Wallace; for, as already observed, if the receiver were permitted to recover more, he would hold the surplus for Wallace, and the defendants would thus be deprived of the benefit of the defense which they have as against Wallace. A receiver does not take title to property acquired by the judgment debtor subsequent to his appointment, excepting as the receivership may be extended thereto pursuant to the provisions of the Code of Civil Procedure. Matter of Walker, supra. And therefore the right of the plaintiff to recover against the defendants in favor of the different judgment creditors he represents may differ accordingly as the facts existing at the time of his original appointment and at the respective times of the extensions of the receiverships may differ.

The complaint does not show the amount of any of the judgments, to satisfy which the receiver brings this action; but the bond given by him with respect to each judgment is small, which indicates that only a comparatively small part of the amount which the decree directed the administratrix to pay over to the receiver will be required. None of the defenses pleaded presents the question with respect to the plaintiff's right to recover the entire amount awarded to him by the decree; and, since the question is not necessarily involved, we express no opinion with respect to the binding effect of the decree of the Surrogate's Court on plaintiff's right to recover the entire amount. We have made these general observations to the end that our decision may not be misunderstood.

In the first defense, the defendants allege in substance that on or about the 18th day of March, 1909, which was nearly four months before the appointment of the receiver, Wallace and the administratrix conspired to and did induce the defendants by false and fraudulent representations to become sureties. The alleged false representations were that the estate was solvent; that becoming sureties was a mere formality, and a neighborly courtesy, involving no risk; that there was "positively no possible liability which could arise under which defendants could be made to answer to their loss or detriment by joining as sureties"; that the assets were "approximately $10,000, and the liabilities $9,000; that the balance of $1,000 belonged to" Wallace; and it is alleged that Wallace and the administratrix then well knew that the as-

sets of the estate, including a saloon owned by the decedent, amounted to over $20,000. It is further therein alleged, in effect, that the purpose of Wallace and the administratrix, in inducing the defendants to become sureties, was to enable them to obtain and to dispose of the assets, and to render the defendants liable for the debts of Wallace to the extent of his interest in the estate, and that, if the defendants had known that the assets amounted to $20,000 or over, they would not have consented to become sureties, and one of them could not have qualified. This defense contains further allegations with respect to the fraudulent transfer of the saloon, and the fraudulent omission to include its value in the assets of the estate; but no facts are alleged showing that the liability of administratrix, adjudicated by the decree, was increased, or that the accounts of the administratrix were surcharged, or that her liability was in any manner affected, through any fraud perpetrated by her and Wallace in disposing of the assets or otherwise, and there is no allegation that any of the fraudulent acts with respect to the disposition of the assets were performed prior to the vesting of title in the receiver. It is further alleged in this defense that on or about the 24th day of March, 1910, the defendants were induced to sign a waiver of citation for the settlement of the accounts of the administratrix by false and fraudulent representations made by Wallace and the administratrix, pursuant to the original fraudulent conspiracy between them, to the effect that all the claims against the estate had been paid; that the administratrix was ready to file her account; that such waiver was a mere formality, and their liability as sureties would be shortly terminated; and they also allege that the waiver was signed *before* the commencement of the proceedings for the settlement of the accounts of the administratrix, and because of this they claim on the authority of Matter of Graham, 39 Misc. Rep. 226, 79 N. Y. Supp. 573, and Matter of Gregory, 13 Misc. Rep. 363, 35 N. Y. Supp. 105, that the Surrogate's Court acquired no jurisdiction over them.

[9] The sureties were, by virtue of the provisions of section 2728 of the Code of Civil Procedure, entitled to notice of the proceeding. It appears by the complaint that the proceeding for the settlement of the accounts of the administratrix was instituted on the same day that the defendants executed the waiver of citation; and it is alleged after the commencement of that proceeding, on due notice to them, a motion was made to bring them in, and that on that motion it was decided that they were already parties to the proceeding and that a supplemental citation was unnecessary. The point that the defendants were not parties to the accounting proceeding was presented on the former appeal and decided adversely to the appellants. See, also, Deobold v. Oppermann, supra. The only allegations of the first defense not presented by the pleading before this court on the former appeal are that it was fraudulently represented to the defendants that the value of the assets was only approximately $10,000, whereas it was over $20,000, and that the amount that Wallace would be entitled to receive was the balance of $1,000 that would be left after paying the liabilities of $9,000. By the former pleading it was, on this point, merely alleged that it was represented that the estate was solvent; but there was no allegation that it was not solvent. Of course, the sureties could not escape

liability *to others* because of false representations made to them by Wallace; but so far as any claim is asserted against them by Wallace, or in his right, they may defend on the ground that as to him they are not liable, because he induced them to become sureties by false and fraudulent representations.

[10] Such a defense is not a collateral attack upon the decree of the surrogate. They could not have prevented that decree upon that ground. They do not thereby question the liability of the administratrix. They merely defend against this contract liability to Wallace, who fraudulently induced them to make the contract. The point that fraudulent representations by Wallace inducing the contract of suretyship in part for his own benefit would alone be a defense to an action brought on the bond by him is not specifically taken in behalf of the sureties; but they have pleaded the facts, and we must adjudicate thereon, and in Casoni et al. v. Jerome, 58 N. Y. 315, it is clearly intimated that the sureties may defend as against one who fraudulently induced them to execute the bond, and I think that intimation is sound, for the reason that Wallace was, as to his own interest, inducing defendants to become sureties for his own benefit, and as to him they should not be held liable if they were induced to sign the bond by any material false representation. See Redfield's Law and Practice of Surrogate's Courts (7th Ed.) § 469; Brandt, Suretyship and Guaranty (3d Ed.) vol. 1, §§ 146, 447; Id. vol. 2, § 726; Mendelson v. Stout, 37 N. Y. Super. Ct. 408; Moodie & Black v. Penman Shaw & Co., 3 Desaus. Eq. (S. C.) 482. The only possible answer to this would be, I think, that the false representations were not material; but it cannot be said that a false representation, to one subjecting himself to liability to the extent of $20,000 to the creditors and next of kin, that the assets were only $10,000—when they were over $20,000, which required a bond for $40,000; see Code Civ. Proc. § 2664—and that the person making the representation would be entitled to the surplus, which would be only $1,000, is not material as between the persons thus subjected to liability and the person making the representation.

Fraud vitiates any contract. Annett v. Ferry, 35 N. Y. 256; Roessle v. Lancaster, 119 App. Div. 368, 104 N. Y. Supp. 217. The bond bound the defendants, of course, in favor of creditors and the next of kin, who were not guilty of fraud, but not in favor of Wallace, who perpetrated the fraud. I am of opinion, therefore, that this defense is good as against the plaintiff; for he, as already observed, stepped into Wallace's shoes, and his rights at that time were subject to this defense.

[11] The second defense is not good. The only facts therein alleged that have even the semblance of a defense are that the administratrix, after her appointment, married Wallace and petitioned for the settlement of her accounts in her former name, and concealed the fact of her marriage from the court. That was not material to the validity of the decree.

The third defense is quite like the second. It merely alleges that on the death of the administratrix a fraud was perpetrated on the court in the application for letters of administration on her estate, by concealing from the court the fact that she was married.

[12] The fourth defense merely alleges that the defendants did not appear before the referee appointed to hear the objections to the accounts of the administratrix, and were not cited, and that the court was without jurisdiction. That defense, manifestly, for the reason that the defendants were parties to the proceeding and are bound thereby, is without merit.

[13] In the fifth defense it is alleged that it was disclosed before said referee that the saloon had been conducted by Wallace as the reputed owner, and that owing to his financial embarrassment it was closed for a period, and was then opened ostensibly in the name of the decedent, but conducted by him until her death, and that in the meantime judgments had been entered against him and he was otherwise indebted; that after the death of the decedent Wallace conducted the business, ostensibly in behalf of the administratrix, and that through fraud and collusion between him and her a sale thereof was effected and fictitious debts were accepted as payment for most of the purchase price, and that the sale was without consideration, and that Wallace continued to conduct the saloon, ostensibly for the purchaser; that the purpose of Wallace and the administratrix in so doing was to avoid the application of the value of the saloon business to the payment of Wallace's debts, as would have resulted, had it been accounted for and distributed in the right of Wallace, and that they also intended thereby to subject the defendants to liability to the creditors of Wallace, "should the frauds be disclosed and result in the surcharging of the account" of the administratrix, who was known to them to be unable to answer for any surcharge of her accounts. The defense here attempted to be pleaded falls short, in that there is no allegation that the accounts of the administratrix were surcharged with the value of the saloon, or with any other assets fraudulently disposed of by her. There is no allegation as to when these alleged fraudulent acts were performed by Wallace. The defense, therefore, fails as to the plaintiff, for his rights could not be affected by any acts of Wallace after he became vested with the title.

The sixth defense is bad, for the reasons assigned for the insufficiency of the fifth. It is therein alleged that the referee and the Surrogate's Court attempted to pass upon the validity of the bill of sale of the saloon and a chattel mortgage, which were attacked on the ground of fraud, and the validity of certain notes and checks against the estate of the decedent, and other claims disputed on the ground of fraud. No facts are here alleged showing that the Surrogate's Court attempted to exercise jurisdiction beyond that possessed by it to charge the administratrix with *the value of the assets of the estate;* and the mere general allegations that the decree, on account of the facts alleged, to which reference has been made, was the result of fraud, collusion, and conspiracy, are of no avail.

[14] The seventh defense merely asserts that the Surrogate's Court was without jurisdiction to make the decree; but no facts showing want of jurisdiction are alleged.

[15] The eighth defense contains a reiteration of the allegations with respect to the fraudulent disposition of the saloon, and alleges that it was so disposed of pursuant to the original conspiracy between

Wallace and the administratrix, and that the plaintiff is aware of the facts, for his counsel brought them out in the proceedings before said referee, and that the decree in favor of the plaintiff is based on the fraud of Wallace and of the administratrix in so disposing of the saloon. It is not even here alleged that the accounts of the administratrix were surcharged on account of this alleged fraud; but, if they were, the decree would not be based upon the fraud. It merely holds the administratrix liable for the value of the assets of the estate. It is further alleged in this defense that the conspiracy between Wallace and the administratrix "was wholly conceived and partly executed prior to the time when the liens were created, which the plaintiff now seeks to enforce" against the defendants. The defense is pleaded as a complete defense; but in no view would it be a complete defense. If the conspiracy was executed in part prior to the time title vested in the plaintiff, and that had been alleged, it would constitute a partial defense, to the extent, if any, that the decree is based thereon.

[16] In the ninth defense it is alleged that the debts of the decedent were paid in full, and that Wallace released the defendants from all liability on the bond by a formal release on the 15th day of January, 1912. Of course, it was not competent for Wallace to release the defendants with respect to any rights vested in the plaintiff. This defense contains other general allegations to the effect that the decree was predicated upon conspiracy, collusion, and fraud on the part of Wallace and the administratrix; but no facts with respect thereto are alleged. No facts with respect to the alleged conspiracy are set forth in this defense, by reference to any other defense or otherwise; but it is alleged therein that "the aforesaid conspiracy was wholly conceived, and the fraud of" Wallace and the administratrix "was perpetrated, prior to the acquisition of the liens by the plaintiff in the proceedings supplemental to execution." These allegations, therefore, are of no value, since facts showing a fraudulent conspiracy resulting in or affecting the decree are not alleged.

The first defense is good, and therefore the order is right, and should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.