UNITED STATES of America,
Plaintiff,

v.

MR. HAMBURG BRONX CORPORA-
TION, Fischer & Miller, Inc., Samuel
H. Lipson, Receiver, Industrial Commis-
sioner of the State of New York, City
of New York, Defendants.

United States District Court
S. D. New York.

Feb. 7, 1964.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, for United States (Robert E. Kushner, Asst. U. S. Atty., of counsel).

Leo M. Anderson, Jr., Yonkers, N. Y., for Fischer & Miller, Inc.

Prime Bros. & Duffy, Yonkers, N. Y., for defendant Samuel H. Lipson, receiver (Francis J. Duffy, Yonkers, N. Y., of counsel).

Louis J. Lefkowitz, Atty. Gen. of State of New York, New York City, for Industrial Commissioner (Samuel Stern, Asst. Atty. Gen., of counsel).

LEIBELL, District Judge.

This is an action by the Federal Government to enforce certain tax liens which it has assessed and filed against the defendant, "Mr. Hamburg-Bronx Corporation", for social security and income taxes, withheld by that corporation from the wages of its employees under the provisions of the tax withholding statute, T. 26 U.S.C. § 3402, formerly § 1622, and for social security taxes due from Hamburg as the employer. The Hamburg corporation had failed to pay over to the Government the taxes it withheld from its employees and failed to pay its own share of the Federal Social Security tax.

"Mr. Hamburg-Bronx Corporation" hereinafter referred to as "Hamburg" was a New York corporation, which, during the period September 1954 to May 15, 1957, operated a restaurant in Bronx County at premises, No. 2468 Grand Concourse. Mr. Al Rader had leased the premises from the Edlar Realty Corporation under a lease dated July 1, 1954. The Edlar Realty Corporation was dissolved August 12, 1957, and the tenant's security was assigned by it to its successor, The Louis Calder Foundation. Al Rader, who was the principal stockholder and President of Hamburg, assigned the lease and the tenant's interest in the security to Hamburg, September 24, 1954.

In March 1957 Hamburg borrowed from a corporation known as "H. M. R. Enterprises, Inc." hereinafter referred to as "H. M. R.", a sum of money which Hamburg used to pay $17,000 of creditors' claims against Hamburg. For this loan H. M. R. received Hamburg's promissory note and the personal guaranties of Al Rader and similar guaranties from Ben Rader, his brother. H. M. R. also received certain chattel mortgages, later consolidated into one chattel mortgage for $22,000, on the restaurant equipment. The chattel mortgage was filed in Bronx County on March 22, 1957.

Since Hamburg was assignee of the lease of the restaurant premises, the lender, H. M. R., also took, as security for its loan, an assignment of the lease and of Hamburg's interest in the rent deposit or security which had been given by Hamburg to the owner-lessor in the sum of $4,125. H. M. R. also received as security for its loan an assignment of a deposit or security of $716.18 given by Hamburg to the Consolidated Edison Company, which presumably supplied light and heat to the restaurant premises.

In a scheme to put Hamburg's assets beyond the reach of its creditors, H. M. R. foreclosed its chattel mortgage and on a short notice of sale (less than 24 hours) bid in the mortgaged chattels for $100.00. On the same day H. M. R. sold its interest in the foreclosed property to a third corporation, "Mr. Hamburg-2468 Concourse Corporation", owned by the Raders, who controlled Hamburg. The third corporation also got the "rent security" and the Consolidated Edison "deposit".

The restaurant business was continued and operated by the third corporation with the old Hamburg employees and the equipment and food on hand. However, the third corporation also got into trouble financially and H. M. R., which had sold the business to the third corporation practically on credit, foreclosed the chattel mortgage in July 1958 and sold the chattels at public sale for $5,140.18.

Before discussing the steps taken by one of Hamburg's creditors, Fischer & Miller, Inc., to upset the fraudulent scheme in respect to the assets of Hamburg, and so that we may keep the chronological order clear, the following is a list of tax assessments of the Federal Government against Hamburg, the amount of each assessment, the amount outstanding, the dates of assessment, the dates Notice and Demands were issued, and the dates the notices of lien were filed (all as compiled from Exhibits 22, 23 and 24, and Exhibits 27 and 28 received in evidence at the trial of this action) :—

| Tax Period | Amount of Assessment | Amount Outstanding | Date of Assessment | Notice & Demand Issued | Notice of Lien Filed* |
|---|---|---|---|---|---|
| 3 Qtr. 55 | $831.73 | $356.73 | 12/23/55 | 1/20/56 | 5/9/56 |
| 4 Qtr. 55 | 700.11 | 700.11 | 3/ 8/56 | 4/3/56 | 5/9/56 |
| 4 Qtr. 56 | 483.51 | 483.51 | 3/22/57 | 3/28/57 | 5/13/58 |
| 1 Qtr. 57 | 434.23 | 434.23 | 5/23/57 | 6/13/57 | 5/13/58 |
| 2 Qtr. 57 | 288.41 | 288.41 | 8/30/57 | 9/5/57 | 5/13/58 . |

* Notices of federal tax liens were filed with the Office of the City Register, Bronx County, New York (Exhibits 27 and 28). The term "QTR." means a quarter of the year of employment for which the wages of Hamburg's employees were withheld.

Bronx County was the county in which the restaurant business was located and in which the Hamburg corporation had its office and was domiciled. It was the proper county in which to file the Government tax liens. Mintz v. Fischer, 19 A.D.2d 36, 38, 240 N.Y.S.2d 649, citing Severnoe Securities Corp. v. London & Lancashire Ins. Co. et al., (opinion by Judge Cardozo) 255 N.Y. 120, 123, 174 N.E. 299.

The Hamburg corporation had also failed to pay to the New York State Industrial Commission "unemployment taxes" due the State of New York. The Industrial Commissioner docketed in March, August and October 1957 warrants against Hamburg for unemployment taxes due the State of New York in the total sum of $1,244.88 and interest, for certain specified quarters of the year of employment involved. (Exs. D-1, D-2 and D-3).

Fischer & Miller, Inc., one of Hamburg's creditors, sued and obtained a default judgment against Hamburg for $10,713.83 on October 10, 1957, in Westchester County, and filed a transcript of the judgment on October 16, 1957 in the Bronx County Clerk's office (Ex. F–M 1). This led to the appointment of Samuel H. Lipson as a Receiver in Supplementary Proceedings under § 804 of the New York Civil Practice Act. All of the dates of assessments for the Federal tax liens are prior in time to the Fischer & Miller, Inc. default judgment and the two notices of liens filed by the Government May 9, 1956 were prior in date to the Fischer & Miller, Inc. default judgment of October 10, 1957.

Mr. Lipson, as Receiver, brought an action against Hamburg, H. M. R. and others, to set aside, as a fraud on Hamburg's creditors, the transfer of Hamburg's chattels to "Mr. Hamburg-2468 Concourse Corporation" and to recover the rent deposit, the Consolidated Edison deposit and a Chevrolet truck.

The New York State Supreme Court in an opinion by Mr. Justice Nathan found there was fraud (Lipson, as Receiver v. H. M. R. Enterprises, Inc., et al, 16 Misc.2d 447, 183 N.Y.S.2d 160). This judgment was modified in amount by the Appellate Division (First Dept.) which made its own findings and described the fraud in detail (9 A.D.2d 759, 193 N.Y.S.2d 138). The New York Court of Appeals affirmed the judgment of the Appellate Division, without opinion. (8 N.Y.2d 989, 205 N.Y.S.2d 161, 169 N.E.2d 285)

The order of the New York State Supreme Court signed by Judge Fine (Ex. 18), entered on the affirmance of the New York Court of Appeals, was consented to by the United States of America and provided that the Receiver, Mr. Lipson, "shall hold the same (the amount collected) subject to the determination of the liens and levys [sic] of the United States of America, if any, with the same force and effect as if the aforesaid funds had remained in the hands of said H. M. R. Enterprises, Inc., until further order of this Court, (the State Supreme Court) and that the Receiver make no disbursement of any part thereof until the question raised by the liens and levys [sic] of the United States of America shall be finally determined."

Then followed this suit by the Government to enforce its tax liens hereinabove listed. The complaint in this action was filed January 9, 1961. The parties named as defendants were those who had asserted claims to the funds hereinafter listed.

*The specific funds involved* in this action to which the Federal Government claims priority by reason of its tax liens are the following:

(1) The sum of $1,283.20 plus interest, held by defendant City of New York as stakeholder, representing a rent deposit due to Hamburg from its landlord, the Edlar Realty Corporation, and turned over to a New York City official, the City Chamberlain.

(2) The sum of $716.18, held by the Receiver Lipson, representing a security deposit paid by Hamburg to the Consolidated Edison Company of New York (Exhibit 31) and turned over to the Receiver, by Consolidated, who deposited it in his account in the Chemical Bank as required by the provisions of his order of appointment (Exhibit F–M 2).

(3) The sum of $2,841.80 plus interest, held by the Receiver Lipson, representing a rent deposit due Hamburg from The Louis Calder Foundation, the successor to Hamburg's landlord, the Edlar Realty Corporation, which sum was also deposited in the Chemical Bank account of the Receiver. This rent security was in addition to the $1,283.20 fund of (1).

(4) The sum of $3,630.78 plus interest, recovered by the Receiver Lipson from H. M. R. et al, representing the value of chattels (after certain credits allowed to H. M. R. by the Appellate Division) belonging to Hamburg which Hamburg had fraudulently transferred.

(5) The sum of $450 plus interest held by the Receiver, representing the value of a Chevrolet truck belonging to

Hamburg, which Hamburg fraudulently transferred.

*The tax liens claimed* and filed are those of the United States of America for the withholding taxes and for Hamburg's Social Security taxes; and the liens assessed by warrants of the Industrial Commissioner of the State of New York for the State's Unemployment taxes. There is also the lien of the default judgment of Fischer & Miller above mentioned.

\* \* \*

As hereinabove stated Al Rader was the president and principal stockholder of the debtor, Mr. Hamburg-Bronx Corporation, which had withheld taxes from its employees under the Withholding Act, and had failed to pay them over to the Government. The Government made a personal penalty assessment of 100% against Al Rader, pursuant to the Internal Revenue Code of 1954, Section 6672, formerly Section 2707(a). The amount thus assessed against Al Rader was $1,-375.45 and the date thereof was April 21, 1958. He paid the penalty assessment in installments between May 7, 1958 and September 28, 1962, plus accrued interest to February 4, 1963 (Ex. 25).

The Government at first applied the penalty assessment collected from Al Rader, to the liability of the Hamburg corporation for the sums it had withheld under the Withholding Act, for which the Government had filed tax liens as hereinabove stated. Rader's personal liability was based on § 6672 of the Internal Revenue Code of 1954 [1] (formerly § 2707(a)).

The personal liability of Al Rader (the principal stockholder and officer of the Hamburg corporation) was something separate and distinct from the liability of the Hamburg corporation under the Withholding Act. Bloom v. United States (9th Cir.), 272 F.2d 215. It was "an utterly separate statutory liability", as stated in the recent (January 29, 1964) decision of the United States Court of Appeals, Second Circuit, in Rosenberg v. United States of America, 327 F.2d 362.

Some time after the entry of a pretrial order herein, the Government discovered its mistake on the law, and reversed the credit it had given the Hamburg corporation on its withholding tax liability aforementioned and reinstated the full amount due the Government from the Hamburg corporation. In its complaint filed in this action January 9, 1961, the Government claims the said full amount due it from the Hamburg corporation.

\* \* \*

*The general priority* of debts due the United States is set forth in T. 31 U.S.C. § 191.[2] The statute is to be

1. "§ 6672. Failure to collect and pay over tax, or attempt to evade or defeat tax

"Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable."

2. "§ 191. Priority established

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed. R.S. § 3466."

This section applies whenever the insolvent debtor commits an act of bankruptcy. United States v. Texas, 314 U. S. 480, 62 S.Ct. 350, 86 L.Ed. 356.

construed liberally in favor of the Government. United States v. Emory, 314 U.S. 423, 62 S.Ct. 317, 86 L.Ed. 315. That priority section applies here. The debtor Hamburg, in the case at bar, committed an act of bankruptcy by fraudulently transferring its assets so as to conceal them from its creditors. The debtor Hamburg was insolvent at the time it committed the act of bankruptcy, in that its liabilities exceeded its assets at that time, as the testimony of the accountant (Samuel B. Ratoff) in this case showed.

■ The obligation to recognize and respect the Government's priority under § 191 rests upon a receiver appointed by a State court. United States v. Sachs, D.C.Md., 217 F.Supp. 545; United States v. Crocker, C.A.Nev., 313 F.2d 946; Smith v. Meader Pen Corporation, 280 N.Y. 554, 20 N.E.2d 13.

*Another basis* for the Government's claim of priority is found in the general lien provisions of the Internal Revenue Code of 1954 (26 U.S.C. §§ 6321–6323).[3] The Federal Tax Liens filed May 9, 1956 (totalling $1,056.84) antedated the default judgment Fischer & Miller, Inc. obtained against Hamburg on October 10, 1957, and antedated the order dated November 15, 1957, appointing Lipson as Receiver under the State Law (Ex. F–M 2). The Federal tax liens filed after October 10, 1957 were for sums that had accrued for quarters prior to October 10, 1957.

The plaintiff's position in respect to the pretrial order and the amount stated therein to be due plaintiff on its tax liens was set forth in a footnote, near the end of plaintiff's trial brief as set forth in footnote [4] of this opinion.

At the trial I reserved decision on plaintiff's motion and received the proof of the parties on that and other issues.

■ I have concluded that Hamburg's liability of $2,262.09, the amount due the Government under the provisions of the Withholding Tax and for Hamburg's Social Security tax, should not be reduced by the penalty payments (with interest) totalling $1,496.97 which the Government assessed against Al Rader and which he paid the Government.

There is no provision in any Federal statute requiring such a credit and the Government was mistaken when it consented to such a credit as the pretrial order provided in this case. It was a mistake of law which the Internal Revenue Service made and later corrected, in good faith and without any damage to the defendants. The net result is the amount of the tax claims of the Government, as originally pleaded by plaintiff in the complaint filed in this Court on January 9, 1961.

\* \* \*

■■ The Receiver Lipson, and the defendant, Fischer & Miller, Inc., contend that the plaintiff (U.S.A.) "slept on its rights" i. e., was guilty of laches in enforcing its priority to the Hamburg assets, which after the Fischer & Miller default judgment came into the Receiver's possession in part as a result of litigation which the Receiver instituted. The Government had assessed and filed as hereinabove set forth, its liens against Hamburg for the sums Hamburg withheld from the compensation of its em-

3. "§ 6321. Lien for taxes
    "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. Aug. 16, 1954, 9:45 a. m., E.D.T., c. 736, 68A Stat. 779."

4. "Plaintiff, in the pre-trial order, mistakenly reduced the amount outstanding on Hamburg's liability from $2,262.09, the amount stated in the complaint, to $1,-496.97. The reduction was due to a credit given Hamburg for personal penalty payments made by Al Rader. At trial, plaintiff will move to amend the pre-trial order so as to state the unsatisfied Hamburg liability to be $2,262.09." This course was followed at the trial.

ployees under the Withholding Act, and for sums Hamburg owed the Government for the employer's half of the Social Security taxes. The filing of the liens put Hamburg, Fischer & Miller, Inc., and the Receiver Lipson on notice of the Government's tax liens and charged them with notice of the Government's priority in claim against Hamburg and Hamburg's assets. The decisions of our appellate courts hold that the Government cannot lose any of its rights through the laches of its agents or employees. United States v. Garcia & Diaz, Inc., 291 F.2d 242 (2nd Cir.); United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283.

■ The priority given by statute to debts due the Government, is a public right, designed to protect and preserve the Government's revenue and property from injury and loss through the negligence of public officers. In United States v. Hoar, 26 Fed.Cas. p. 329, No. 15,373, the opinion of Mr. Justice Story, citing Blackstone, supports the principle that there is "the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers" and "that no laches can be imputed to the government." The application of that public policy in the case at bar, to the claims of the United States of America and to the claims of the State of New York, refute the contentions of the Receiver Lipson and of the judgment creditor, Fischer & Miller, Inc., that the Federal and State governments "slept" on their rights to enforce their claims and that the claims therefore lost their priority.

■ The priority of the Government's tax liens against Hamburg under T. 31 U.S.C. § 191 and the protection of that priority against Hamburg's fraudulent transfer of assets to H. M. R., assets (or the value thereof) which later came into the possession of the Receiver Lipson, appointed in the supplementary proceedings under the Fischer & Miller default judgment, subordinates the claims of Fischer & Miller to the Government's tax liens and burdens the assets

of Hamburg which came into the Receiver's possession with the Government's tax liens. The filing of the liens constitute statutory notice of their existence and priority. The same is true of the notices of assessment of tax liens and claims by the State of New York and their rights to priority over the judgment creditor and the Receiver Lipson.

\* \* \*

The question of what sum the United States of America and the State of New York should in equity contribute towards the expenses that the Receiver Lipson and his attorney, Mr. Duffy incurred in recovering the possession of certain funds to which the Government claims its liens had attached, namely, (a) the security deposit ($716.18) with the Consolidated Edison Company; (b) the rent deposit security held by the landlord, Edlar Realty Corporation ($2,841.80) and (c) the sum of $4,434.82 recovered by the Receiver under the order of Judge Fine dated October 19, 1960 (Ex. 18) entered on the affirmance of the New York Court of Appeals will now be considered.

With the post trial brief to Mr. Duffy, the attorney for the Receiver Lipson, there was filed a list of disbursements made by the Receiver Lipson in the action which his attorney, Mr. Duffy, brought to recover Hamburg assets which had been fraudulently transferred. The order (Ex. 18) under which the Receiver Lipson received some of the items he recovered, specifically provided that he was not to make any disbursements therefrom until the claimed priority of the Government's tax liens had been determined by this Court.

■ Mr. Duffy, formerly the attorney for Fischer & Miller, Inc., and later for the Receiver Lipson, was vigilant and industrious. But a creditor who is vigilant in asserting and pressing his claim against the tax debtor, does not by reason of that vigilance obtain for his claim priority over the Government's tax liens against the debtor. Smith v. Meader Pen Corporation, 280 N.Y. 554, 20 N.E.2d 13.

However, I believe that the proper legal disbursements of the Receiver and of his attorney, Mr. Duffy, as they may be fixed by the State Supreme Court should be borne in some part by the two priority claimants the United States of America and the State of New York.

██ But the United States of America and the State of New York should not be required to pay any part of the Receiver Lipson's expenses or for the services of his attorney, Mr. Duffy, in the action in this Court. The Receiver Lipson joined with Fischer & Miller, Inc., in opposing the priority of the tax liens claimed by the United States of America and by the State of New York in this action.

██ Under New York and Federal law the priority of the Federal and State tax liens is recognized and the amounts collected by the Receiver Lipson are subject to those tax liens, Smith v. Meader Pen Corporation, supra, and Matter of Mintz v. Fischer, 19 A.D.2d 36, 240 N.Y.S.2d 649, I believe that it is equitable that the Federal and State governments should contribute a proper sum towards the Receiver Lipson's legal expense in the State Court action. I have concluded that those tax liens should contribute 25% of their total face amount ($3,507.87) or approximately $875.00, which should be charged against the said tax liens proportionately and allotted to the Receiver Lipson towards his legal expenses and disbursements in the litigation he instituted in the State courts. Subject to that charge of $875.00 the tax liens of the United States of America and the State of New York are allowed in full in this action. They can be paid out of the following funds which total $4,841.18:—

(1) The $1,283.20 plus interest, a rent deposit held by the City of New York as stakeholder;

(2) The $716.18 held by the Receiver Lipson and received by him as a security deposit paid to Consolidated Edison by Hamburg; and

(3) The sum of $2,841.80 held by the Receiver Lipson, and received from The Louis Calder Foundation as a security deposit made by Hamburg with its former landlord, Edlar Realty Corporation of which The Louis Calder Foundation was the successor.

\* \* \*

██ Ordinarily, the priority of liens is determined on the principle "first in time first in right". See Meyer v. United States, decided by the United States Supreme Court, December 16, 1963, 375 U.S. 233, 84 S.Ct. 318, 11 L.Ed.2d 293, citing United States v. New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520.

Applying that principle to the case at bar the Government's liens filed May 9, 1956, on which the amount outstanding was $1,056.84 ($700.11 plus $356.73) are prior in time of filing to the date (October 10, 1957) when Fischer & Miller obtained a default judgment against Hamburg for $10,713.83.

██ But if the dates of assessment of the Government's tax liens is applied, or if the dates when notice and demand were issued, are used, all of the Government's liens totalling $2,262.99 are prior in time to the date of the filing of the Fischer & Miller judgment. I have concluded that all the Government's tax liens against Hamburg are entitled to priority over the Fischer & Miller default judgment. Matter of Mintz v. Fischer, 19 A.D.2d 36, 240 N.Y.S.2d 36.

\* \* \*

██ The Industrial Commissioner of the State of New York has also asserted State tax claims against Hamburg for "unemployment taxes" due the State in the total amount of $1,244.88. For these tax claims the New York State Industrial Commissioner docketed warrants against Hamburg in March, August and October 1957 for sums totalling $1,244.88. They were subsequent in time to the first two notices of tax liens filed by the Federal Government on May 9, 1956, totalling $1,056.88; but were prior to the last three notices of tax liens totalling

$1,206.15 filed by the Government May 13, 1958. The State's warrants (Exs. D–1, D–2 and D–3) filed May 24, 1957 for $868.31 and August 8, 1957 for $236.67 and October 10, 1957 for $139.90 were docketed prior to the Fischer & Miller default judgment of October 10, 1957, except the State's tax warrant of October 10, 1957 for $139.90 which was filed the same date as the Fischer & Miller judgment. The State's liens entitle them to priority over the last three notices of tax liens filed by the Federal Government May 13, 1958, totalling $1,206.15 as aforesaid and to priority over the Fischer & Miller default judgment.

The order of priority of the Federal and State tax liens according to the dates they were filed may be summarized as follows:

| | | |
|---|---|---|
| United States of America | $1,056.84 | (May 9, 1956) |
| State of New York | 1,244.88 | (May 24, August 8 and October 10, 1957) |
| United States of America | 1,206.15 | (May 13, 1958) |

---

The priority of Federal tax liens over State tax warrants was sustained in In re De Kalb Ave. Reconstruction, 11 A.D. 2d 240, 254–255, 205 N.Y.S.2d 125, 138–139 (2d Dept. 1960, affirmed without opinion, 12 N.Y.2d 1051, 239 N.Y.S.2d 880, 190 N.E.2d 240 (1963).

The order of Judge Streit, dated November 15, 1957, appointing Mr. Lipson Receiver, contained the following provision:

"ORDERED that the said Receiver deposit all of the funds of the receivership in the Chemical Corn Exchange Bank, 167th St. & Jerome Ave. Bronx, of New York, in his name as Receiver, and no withdrawal shall be made therefrom except as directed by the Court by draft or check signed by the Receiver and countersigned by the surety or his bond; * * * *"

Mr. Duffy's affidavit of December 30, 1963, submitted in the action in this Court, states that annexed thereto is a record of disbursements made by Mr. Duffy on behalf of the Receiver Lipson in the Supreme Court, Bronx County, action and in the present action. Where the moneys collected by the Receiver Lipson are now on deposit is not stated. But wherever they may presently be held by the Receiver they are subject to the tax liens of the United States of America and the State of New York.

As stated by the Appellate Division, First Department, in Smith v. Meader Pen Corporation, 255 App.Div. 397, 399, 8 N.Y.S.2d 39, 42:

"A receiver in supplementary proceedings takes the property of the debtor subject to all outstanding rights existing against the debtor including any lien for taxes. High on Receivers, 4th Ed., § 138. In other words, the receiver steps into the shoes of the debtor, and is vested with his property as the arm of the Court for the benefit of the creditor. Steinert v. Van Aken, 165 App.Div. 206, 150 N.Y.S. 525. Because the receiver acts for one creditor it does not necessarily follow that the Court will decline to recognize the existing lien of the State for franchise taxes, or insist on the extension of the receivership to the claim of the State before it will recognize such a claim. Supplementary proceedings are created by statute to replace the former procedure of filing a creditor's bill in equity. It is the duty of the Court to recognize as paramount, and enforce with promptness and vigor the just claims of the authorities for the prescribed contributions to State and Federal revenue. Ex parte Tyler, 149 U.S. 164, 182, 13 S.Ct. 785, 37 L.Ed. 689. See

Tardy's Smith on Receivers, Second Edition, Vol. 2, p. 1854, § 678."

The Appellate Division also stated in Smith v. Meader Pen Corporation, supra, that the record contained no claim for any superior lien, and held that the receiver clearly took the property of the debtor subject to the lien of the State, though that lien was inchoate and not specific, and that it was the duty of the court to see that the taxes due the State, and for which the State had a prior lien, were paid before the payment even to a "vigilant creditor" who had seized the judgment creditor's property for the purpose of satisfying his claim. The Appellate Division also held that there was no ground for distinction between the 1937 taxes for which a warrant had been filed, and those for 1936 and 1938 which had become payable prior to the appointment of the receiver, but for which no warrant had been filed.

Mr. Duffy, the attorney for the Receiver Lipson, has filed an affidavit that he paid certain sums, out of the funds collected by the Receiver, to meet the expenses of the litigation in which the Receiver Lipson was appointed and judgments obtained against H. M. R. and certain corporations to which the assets of Hamburg had been illegally transferred. The Receiver Lipson had been authorized by an order of the State Supreme Court to engage Mr. Duffy as his attorney and he did considerable legal work for the Receiver. He is supposed to make application to the State Supreme Court to fix the amount of his fee for services rendered the Receiver in the State Court action in which the Receiver was appointed. Dailey, Jr. as Trustee in Reorganization and Kennedy, Jr. as Receiver in Supplementary Proceedings v. Gidinsky, 293 N.Y. 889, 59 N.E.2d 790. To date no such application has been made. What the amount should be and for what services and disbursements, will be for the State court in which Mr. Lipson was appointed Receiver, to determine.

One of the defendants in this action is Fischer & Miller, Inc. It has filed an answer in which it claims reimbursement for sums it expended in having the Receiver Lipson appointed and in conducting litigation instituted by Receiver Lipson to recover assets of Hamburg which had been transferred by Hamburg to others in fraud of creditors. The amount claimed for those disbursements, set forth in paragraph Ninth of the Fischer & Miller answer, was increased at the end of the trial of this case to the sum of $1,112.87, alleged to be based on § 804–a [1547] of the New York Civil Practice Act.

The Fischer & Miller, Inc., counterclaims against the United States of America in this action and the Fischer & Miller, Inc., claims against the State of New York are dismissed. If Fischer & Miller, Inc. is entitled to any reimbursement from the Receiver Lipson it should make claim for it when the Receiver Lipson files a final accounting for the total of $5,900, hereinafter itemized, and seeks a discharge in the State Court proceeding in which he was appointed Receiver.

The order of the State Court that appointed Mr. Lipson Receiver provided that any sums recovered by the Receiver should be deposited in the Chemical Corn Exchange Bank subject to the further order of the Court that appointed Mr. Lipson. If all the funds hereinabove listed, as claimed by him, had been gathered into the State Court proceeding, and if the Federal and State governments had been cited to come in and establish their tax liens in that proceeding, the present action in this Federal Court would not have been necessary. The Federal Government and the State of New York could have had their tax liens considered and given effect in that State Court proceeding.

At the hearing in this present action the Fischer & Miller, Inc.'s attorney stated on the record that the Receiver Lipson would authorize Mr. Duffy to disburse certain funds, in behalf of the Receiver, principally to Mr. Duffy's law firm for its expenses in connection with the legal services rendered in the action brought

by the Receiver Lipson to recover the assets of Hamburg transferred in fraud of Hamburg's creditors. I question the Fischer & Miller, Inc.'s attorney's authority to give any such authorization. That authority could have been sought and may still be sought in the State Court proceeding. This Court will not assume to rule on the various items of Mr. Duffy's disbursements.

The following items show how the net figure of $5,900, for which the Receiver Lipson may account in the State Court, is calculated:

| | | |
|---|---|---|
| The rent security deposit with the City of New York amounts to | | $1,283.20 |
| The service deposit security on deposit with Consolidated Edison and now held by the Receiver is | | 716.18 |
| The rent security on deposit with and held by the landlord Edlar or its successor, The Louis Calder Foundation was | | 2,841.80 |
| The total of these security funds is | | $4,841.18 |
| The total of U. S. Tax liens is | $2,249.48 | |
| The total of the State tax liens is | 1,173.63 | |
| The total of tax priority claims (State and Federal) is | $3,423.11 | |
| If these tax liens were paid in full out of the security funds above listed | | $4,841.18 |
| | | 3,423.11 |
| A balance of | | $1,418.07 |
| would remain with the Receiver Lipson | | |
| Adding to that balance | | $1,418.07 |
| The recovery by the Receiver from H. M. R. | | 3,630.78 |
| And the total is | | $5,048.85 |

———◇———

To which should be added $875.00, contribution from the tax liens as hereinabove determined, making a total of $5,923.85 for which the Receiver Lipson will account in the State Court proceeding in which he was appointed Receiver.

This opinion contains the Court's findings of fact and conclusions of law, pursuant to Rule 52(a), Federal Rules of Civil Procedure.

\*　　\*　　\*

The judgment to be entered in this action will set forth the amounts of the tax liens of the United States of America and the tax warrants of the Industrial Commissioner of the State of New York; and it will declare their validity and priority over any claim of the debtor, Mr. Hamburg-Bronx Corporation, over any claim of the judgment creditor, Fischer & Miller, Inc., and over any claim of Samuel H. Lipson, Receiver.

The judgment will also declare the priority of the tax liens of the United States in the sum of $1,056.84, filed May 9, 1956, over any tax liens or claims of the State of New York as represented by the tax warrants of the Industrial Commissioner of the State of New York.

The judgment will direct that the funds ($1,285.20) held by The City of New York, as stakeholder, be paid over to Lipson, as Receiver, to be held by him subject to the priority of the tax liens

of the United States of America and of the tax warrants and claims of the Industrial Commissioner of the State of New York.

The judgment will further provide that from the total ($3,507.87), of the tax liens of the United States of America and the tax claims of the State of New York, the Receiver may deduct $875.00 to be applied by the Receiver towards the disbursements and expenses he incurred in the conduct of the litigation he instituted in the State Supreme Court to recover certain assets, or their value, which had been fraudulently transferred by Mr. Hamburg-Bronx Corporation to others as determined in that State Court litigation.

The judgment to be entered herein will also provide that the tax liens of the United States of America, totalling $1,056.84, filed May 9, 1956, are superior in priority to the tax claims asserted by the Industrial Commissioner of the State of New York in warrants totalling $1,244.88 docketed in 1957, and that the tax claims of the Industrial Commissioner set forth in the State's tax warrants are superior in priority to the tax liens of the United States of America filed May 13, 1958, for a total sum of $1,206.15.

The judgment to be entered herein will provide that the claims of Fischer & Miller, Inc., against plaintiff, United States of America, and against the defendant, Industrial Commissioner of the State of New York, for the payment to Fischer & Miller, Inc., of sums it advanced to the Receiver Lipson and his attorney, Mr. Duffy, towards the expense of conducting the litigation of Lipson as Receiver in the New York State courts, to recover assets of Mr. Hamburg-Bronx Corporation that had been fraudulently transferred, are dismissed, without prejudice to any claims Fischer & Miller, Inc., may wish to assert for said reimbursement, in the accounting proceeding of the Receiver Lipson when it is instituted in the State Court which appointed Mr. Lipson as Receiver.

The judgment will award a single bill of costs to the plaintiff herein, United States of America, against Fischer & Miller, Inc.

If any of the parties to this litigation wish to have the judgment include any further provisions, not inconsistent with those hereinabove specified, they should so advise the Clerk of this Court in writing within five (5) days after the Court's opinion in this case is filed in the Clerk's office.