In the Matter of the City of New York, Relative to Acquiring Title to Real Property for De Kalb Avenue Reconstruction, Borough of Brooklyn. United States of America, Appellant; Bernard W. Coblentz et al., Respondents.

Second Department, July 5, 1960.

242

*Cornelius W. Wickersham, Jr., United States Attorney* (*Irving L. Innerfield* of counsel), for appellant.

*Bernard W. Coblentz,* respondent in person.

*Charles H. Tenney, Corporation Counsel* (*Stanley Buchsbaum, Bernard H. Sherris* and *Cornelius F. Roche,* of counsel), for City of New York, respondent.

CHRIST, J. The condemnee whose damage award is involved here was Capri Italian Restaurant and Pizzeria, Inc., a lessee of store premises in a building which was included in the acquisition of property in this proceeding. The award, which was for trade fixture damage, was for $10,000. Capri had many creditors, some of whom claimed liens on the award. In addition, Capri had made several assignments of various portions of the award. The total amount of the claims of these creditors, lienors and assignees exceeded the amount of the award. The order under review determined the propriety and amounts of the various claims, at least so far as necessary, and the order of priority of disbursement of the award among the claimants. The order granted priority of payment in full to certain of the claimants, not including the United States of America. It also granted priority to 10 other claimants, including the United States, as against the remaining claimants in the distribution of the balance of the award. However, since the balance was not sufficient to pay this group of 10 claimants in full, the order directed distribution to them of the entire balance in respective prorated amounts.

The only appellant is the United States. Its claim is based on various assessments made by the Secretary of the Treasury for taxes that Capri had withheld from salaries of its employees.

The claimants who were given priority over the United States are respondents Diamond and Polito, who held chattel mortgages on the fixtures, respondents Coblentz and Russo, who had represented Capri as attorneys in this proceeding and whose written retainer contained an assignment of part of the award for their services, respondent City of New York, for sales and business taxes, and respondent New York City Transit Authority, which claimed to be entitled to part of the award as payment for the reasonable value of Capri's use and occupancy of the store premises after the date of the vesting of title. The nine claimants who were granted equal status and prorata distribution with the United States are respondents Schifrin, Greneman, Ajello and Decco Heating Co., who hold assignments from Capri, respondents Industrial Commissioner of the State of New York and Russo, who are judgment creditors of Capri, respondents Hoffman Beverages and Vassalo, who are both assignees and judgment creditors of Capri, and respondent Caramanica, who may be termed a general creditor. Respondent Russo, the judgment creditor, is the same claimant who, with respondent Coblentz, holds an assignment. However, his judgment is for services unrelated to this proceeding. The United States does not question the granting of priority over it to Diamond and Polito.

The governing Federal statutes as to creation of the liens of the United States for the withholding taxes in question are sections 3670, 3671 and 3672 of the Internal Revenue Code of 1939 (in effect until Jan. 1, 1955), and their counterparts, sections 6321, 6322 and 6323 of the Internal Revenue Code of 1954 (in effect as of Jan. 1, 1955) (U. S. Code, tit. 26, § 7851, subd. [a], par. [6]). Sections 3670 and 6321 identically provide that, if a person neglect or refuse to pay any tax owing by him, the amount of the tax, including interest, '' shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.'' The time when any such lien shall have arisen is stated in section 3671 to have been when '' the assessment list was received by the collector '' and in section 6322 when '' the assessment is made ''. However, in sections 3672 and 6323 it was provided that the lien '' shall not be valid as against any mortgagee, pledgee, purchaser or judgment creditor until notice thereof has been filed '' in the appropriate public office therefor. If the

subject property be situated in a State which has designated the office for that purpose, the latter sections state that that is the office for such filing. Here the office for the filing of the notices was that " of the city register in the county of Kings " (Lien Law, § 240, subd. 2; § 245).

The governing statute as to the sales tax of the City of New York, liens therefore and enforcement thereof, is title N of chapter 41 of the Administrative Code of the City of New York (see § N41–2.0 thereof). Section N41–7.0 thereof authorizes the Comptroller of the City of New York to determine the amount owing by any person for sales tax for any tax period for which such person shall have failed to file a sales tax return. It further provides that notice of the determination is to be given to 'the person against whom the assessment is thus made and affords him the remedies of a hearing before the Comptroller and also a judicial review in a proceeding pursuant to article 78 of the Civil Practice Act. Under this section the assessment is final and irrevocable unless application for a hearing before the Comptroller is made within 30 days after the notification of the assessment determination, or unless the Comptroller on his own motion redetermines the same. Subdivision b of section N41–11.0 authorizes the Treasurer of the City of New York to issue a warrant to the City Sheriff or to any officer or employee of the city's Department of Finance commanding such official or employee to levy upon and sell the property of the person liable for the tax. It further provides that a copy of the warrant shall be filed with the County Clerk within five days after issuance of the warrant, that the County Clerk shall enter the name of such person, the amount for which the warrant was issued, and the date of the filing " in the judgment docket " and that thereupon " the amount * * * so docketed shall become a lien upon the title to the interest in real and personal property of the person against whom the warrant is issued." The subdivision continues that the official or employee to whom the warrant was issued " shall then proceed upon the warrant in the same manner, and with like effect, as that provided by law in respect to executions issued against property upon judgments of a court of record ".

The governing statute as to the business tax of the City of New York for the tax periods here in question, liens therefor and enforcement thereof, is title B of chapter 46 of the Administrative Code (see § B46–2.0 thereof). Section B46–6.0 and subdivision b of section B46–10.0 thereof contain the same provisions as to tax assessments, determinations and review,

creation of liens for the tax, and enforcement, as do the sections above mentioned with respect to the sales tax, except that here the provisions apply to the stated business tax.

With respect to the claimed judgment of the Industrial Commissioner, State statute makes similar or comparable provision as to determination of liability and amount owing, review of such determination, finality of determination, and enforcement of liability, including the subject of execution of warrants (issuable by the Commissioner), except that entry in a County Clerk's judgment docket renders the amount of the warrant a lien only on real property (see Labor Law, §§ 571–573, 620–626).

The governing statutes with respect to the claim of the Transit Authority are subdivision b of section B15–37.0 of the Administrative Code and title 9 of article 5 of the Public Authorities Law. The code provision permits a person in possession of premises, taken by the city in a condemnation proceeding, at the time of the vesting of title to remain in possession as a tenant at will of the city under certain circumstances, and that where such person " is entitled to an award in such proceeding, the reasonable value of his use and occupancy of the premises * * * during the period between the date of the vesting of title in the city and the date of the actual payment of the award, shall be a lien against such award, subject only to liens of record at the time of the vesting of title in the city." Reference to the Public Authorities Law is only for the purpose of indicating the basis for substituting the Transit Authority for the city insofar as the right to recover for the use and occupancy of the premises, and the right to a lien on the award, are concerned.

Although Coblentz and Russo have relied on the assignment provisions in their retainer agreement, Coblentz has filed a brief in which he also relies on the lien provisions of section 475 of the Judiciary Law. The section states that from " the commencement of an action, special or other proceeding * * * or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a * * * determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come ".

As to the nature of the lien of a judgment in a court action, we turn to the Civil Practice Act. Section 510 thereof provides that a judgment for a sum of money docketed in a County Clerk's office " binds, and is a charge upon, for ten years after filing the judgment roll," the debtor's present or after-acquired real

property in the county. Personal property of the debtor other than debts and causes of action arising under a contract becomes "bound" by issuance of execution upon the judgment "from the time of the delivery thereof [the execution] to the proper officer to be executed, but not before" (Civ. Prac. Act, § 679). Furthermore, one who is indebted to the judgment debtor may be enjoined from paying the latter by service upon the former of a third-party order or subpœna based upon the judgment (Civ. Prac. Act, § 779).

It appears that title to the condemned property vested on February 8, 1956. The order granting the application to condemn was made on that day. The final decree, which granted the award to Capri, was made on December 17, 1956. Some of the claims of the United States became liens prior to the vesting of title, and others became liens thereafter. It happens that the former became liens under the Internal Revenue Code of 1939, and the latter became liens under the Internal Revenue Code of 1954. The respective assessment lists covering the former were received by the Collector of Internal Revenue at various times from September, 1953 through June, 1954. The respective assessments covering the latter were made at various times after January 1, 1955, i.e., one in February, 1956, several in March, and one in August of that year. The specific times of filing of all the notices of liens of the United States in the City Register's office, and the respective amounts of lien claims covered by the notices, are important as against the claims of the Transit Authority and of Coblentz and Russo on their retainer agreement and will be stated hereinafter.

A single warrant for the sales and business taxes claimed to be owing to the city was issued on June 18, 1957 and was filed on the same day in the office of the County Clerk of Kings County. It is patent that the city could not prevail against any of the lien claims of the United States on the theory that the docketing of the warrant gave the city a lien on Capri's available property, since the docketing of the amounts due on the warrant could not have taken place until after all the claims of the United States had become liens (the law on this subject will be discussed hereinbelow with respect to judgment liens). Apparently it is because of this that the city has renounced such theory and has advanced the theory that the taxes owing to it became due prior to the 1956 assessments for tax due the United States and that it was entitled to have the taxes due it set off against the condemnation award, thus reducing the property (the award) to which the liens of the United States could attach. In advancing this theory, the city concedes that the liens of the

United States, notices of which were filed prior to the vesting of title, are superior to the city's claims.

The only evidence submitted in support of the city's claim is a certified copy of the warrant. It recites that the following "taxes have been found due": "SALES" for the period "4-1-54–2-29-56 $3,138.40" and "BUSINESS" for the period "7-1-53–2-29-56 $499.50", a total of $3,637.90. Nowhere does the date when these taxes were found to be due appear.

" The effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question." (*United States* v. *Security Trust & Sav. Bank,* 340 U. S. 47, 49.) However, the issue of whether the debtor in question has a property interest in the asset which is sought to be subjected to liens is determined by State law (*United States* v. *Bess,* 357 U. S. 51; *Matter of City of New York [U. S. A.-Coblentz],* 5 N Y 2d 300, 308; *Ætna Cas. & Sur. Co.* v. *United States,* 4 N Y 2d 639; *Fidelity & Deposit Co. of Maryland* v. *New York City Housing Auth.,* 241 F. 2d 142). In other words, the liens of the United States for taxes " attach only to ' property and rights to property ' belonging to the taxpayer (§ 6321) " (*Matter of City of New York [U. S. A.-Coblentz],* supra, p. 308).

In passing, we note that it is of no moment that some of the liens of the United States came into being when Capri had title to the fixtures and that some of these liens came into being after title had passed. The damage award took the place of the fixtures (see *Muldoon* v. *Mid-Bronx Holding Corp.,* 287 N. Y. 227, 229).

As to the question of the efficacy of the liens of the United States which are here in question, attainment of their lien status under the heretofore stated Federal statutes did not depend upon any filing in any public office of a State or subdivision of a State. It was based rather upon the receipt of an assessment list by the Collector (prior to Jan. 1, 1955) or upon the making of an assessment (subsequent to Jan. 1, 1955) (see *United States* v. *Scovil,* 348 U. S. 218). The only incursion on this rule that is permitted is under the stated further provisions of the Federal statutes that liens for Federal taxes are invalid as against any mortgagee, pledgee, purchaser or judgment creditor, achievement of whose rights and status was antecedent to the filing of notice of such liens (*United States* v. *Scovil,* supra; *United States* v. *Security Trust & Sav. Bank,* supra, pp. 50–53).

The doctrine that a condemnation award may be the subject of a setoff is an acceptable one. There is " manifest equity " in

it (*Matter of Nunez,* 226 N. Y. 246, 250). It follows that a setoff against such an award results in a reduction of the award or the right to the award or, to quote again from sections 3670 and 6321 of the Federal statutes, a reduction of the debtor-condemnee's "property and rights to property" to which a lien of the United States could attach.

However, a setoff may not be allowed if the claim sought to be employed for the purpose has not become due and payable "and final in its nature", at least absent special consideration, such as insolvency of the one against whom setoff is sought, or in the event of his having made an assignment (*De Camp* v. *Thomson,* 159 N. Y. 444, 448; see, also, *Jordan* v. *National Shoe & Leather Bank of City of N. Y.,* 74 N. Y. 467). Furthermore, the claim must not be unliquidated (*Jennings* v. *Webster,* 8 Paige Ch. 503; *M'Donald* v. *Neilson,* 2 Cow. 139, 174; *Livingston* v. *Livingston,* 4 Johns. Ch. 287, 292; *Duncan* v. *Lyon,* 3 Johns. Ch. 351).

There was no evidence that the city's claims for taxes were "final" and liquidated when any of the liens of the United States attached to the fixtures or the right to the award. A finding that the city's claims were final and liquidated would depend at least upon proof of the making of assessments therefor by the city's Comptroller, if not also upon proof as to disposition of possible applications for redetermination of such assessments or for judicial review thereof. In the absence of proof as to the time or times of the making of such assessments, we may not find that they were made prior to the date of the warrant, June 18, 1957, which was subsequent to the times when the liens of the United States had attached to the fixtures or the right to the award. Accordingly, we conclude that Capri's property was free of the claimed setoff at all times when the liens of the United States attached and that, therefore, the United States should prevail, for all of the amounts owing it, over the city's claims for sales and business taxes.

We turn now to the contests between the United States and respondents Coblentz and Russo and between the United States and the respondent Transit Authority. Issues similar to those involved in this aspect of the matter were decided in *Matter of City of New York (U. S. A.-Coblentz)* (5 N Y 2d 300, *supra*). In that case the claim of the condemnee's attorney, based on a similar retainer agreement for legal services in the condemnation proceeding, and the claim of the sponsor of the condemnation, for use and occupancy of condemned premises, prevailed over the lien of the United States for taxes. The controlling effect of that case does not extend fully to the instant

case. Certain factual differences in the instant case require different treatment of the issues. In our opinion, part of this aspect of the controversy should be remitted to the Special Term for a rehearing and determination of factual questions.

In the cited case, Coblentz' retainer agreement was dated March 8, 1954, and it contained, as does the instant one, words assigning to him for his services a stated percentage of the anticipated damage award. Title to the condemned property vested on August 5, 1955, and the final decree fixing the award was made on September 25, 1956. In the interim, and on May 23, 1956, the Bureau of Internal Revenue filed a notice of lien for withholding tax owed by the condemnee, based on four assessments. Three of these assessments had been made, successively, in May, August and November of 1955, and the fourth had been made in 1956. On the same day that this notice was filed, the sponsor of the project, New York University, obtained a judgment against the condemnee for use and occupancy of the premises after the vesting of title. Five days later, notice of the judgment was filed with the Comptroller of the city. The order of priority of payment out of the award moneys that was approved was first the sponsor, then Coblentz, and last the United States.

As to the sponsor's position, the majority opinion reasoned that the effect of section B15–37.0 of the Administrative Code was to reduce the award " by the reasonable value of the use and occupancy from the date the property was condemned until actual payment of the award" (p. 314), that the sponsor's claim had been confirmed by the procurance of the judgment on the same day that the notice of lien was filed by the United States, that the said section of the Administrative Code made the award subject to the payment of the judgment, and that, in other words, the " ' property and rights to property ' which remained was all that the taxpayer had to which the Government lien for taxes could attach in any event " (p. 315).

As to Coblentz' position, the opinion stated that the express words of assignment in his retainer accomplished " an immediate transfer of a percentage interest in " the right to the condemnation award, " effective at, as and of the time of the making ", thereby giving him " a vested property interest in the award which he had ' purchased ' for good and valuable consideration, to wit: his services as rendered and to be rendered in the premises ", and " [b]y the same token " reducing his client's " ' property and rights to property ' (a cause of action * * *) " to the " balance remaining after transfer to the attorney of his agreed share " (pp. 307–308), so that " only

the unassigned balance was liable for the tax" (p. 310). Further, however, in distinguishing *United States* v. *Pay-O-Matic Corp.* (162 F. Supp. 154, affd. *sub nom. United States* v. *Goldstein,* 256 F. 2d 581, cert. denied 358 U. S. 830 *sub nom. Goldstein* v. *United States,* motion for leave to file petition for rehearing out of time denied 359 U. S. 985), the opinion stressed the facts that Coblentz' " retainer antedated the condemnation order by over one year ", the United States' tax assessments by " over 14 to 21 months " (p. 313), and the filing of the United States' notice of lien by two years and two months, that the earliest time that Coblentz and his client could be said to have had notice that the client owed withholding tax was when the said tax assessments were made, and that Coblentz " had fully performed the services necessary to create the fund " before the United States filed its notice of tax lien (p. 314).

It is our understanding of the majority opinion in the cited case that the lien of the United States was subordinated to the claims of the sponsor and the attorney only because of the court's conclusion that the positions of the sponsor and the attorney were those of purchasers, in other words, that the sponsor and the attorney were not being given their priorities on the theory that they held liens superior to the lien of the United States, even though the opinion does also refer to their claims as liens. We believe that the true basis for the decision must be found in the statements that the claims of the sponsor and the attorney reduced the condemnee's " ' property and rights to property ' ", that such reduction left only the balance available for liens, that the attorney had " purchased " his interest in the award, that present consideration given by the attorney was his services, completed prior to the filing of the United States notice of lien, and that the sponsor's judgment was procured not later than the filing of the United States lien, and in the implication that present consideration was given by the sponsor in the form of use and occupancy of the condemned premises. To refer to claims as reducing a condemnee's " ' property and rights to property ' " and as leaving only the balance thereof available for liens, is certainly antithetical to the view that the claims are themselves liens on that " ' property and rights to property ' ".

We also believe that there can be no question but that the court would not have held the transfers to the sponsor and the attorney of respective parts of the award as validly effectuated as against the lien of the United States had the court not found that consideration had been given in full for the transfers prior to the filing of the United States' notice of lien and that

the consideration was present consideration. On the subject of present consideration, see *United States* v. *Franklin Fed. Sav. & Loan Assn.* (140 F. Supp. 286) and *Filipowicz* v. *Rothensies* (43 F. Supp. 619, 624), in which it was held that assignees for past-due consideration are not purchasers within the meaning of the provisions of the Internal Revenue Code presently in question (see, also, Federal Tax Regulations, § 301.6323-1, subd. [a], par. [2], cl. [i], sentence [a]). It was further held in the two cases just cited and in *MacKenzie* v. *United States* (109 F. 2d 540, 542), that the burden of proof on the issue of whether the consideration was present consideration is on the assignee.

Here, unlike *Matter of City of New York* (*U. S. A.-Coblentz*) (5 N Y 2d 300, *supra*), the record would not support a finding that the consideration given by Coblentz and Russo and by the Transit Authority had been given in full prior to the filing of all the notices of liens of the United States.

The attorneys' retainer agreement was made only a day before the making of the condemnation order. The Transit Authority did not begin giving consideration for its purchase until the making of that order. Long before this, the first four items of Federal tax had become liens, by the Collector's receipt of assessment lists, and notices thereof had been filed. Accordingly, even assuming that the Transit Authority's interest in the award became effective with the making of the condemnation order and that the assignment to the attorneys began to have efficacy the day before, their interests in the award or the right thereto, did not affect the said first four items of the United States' liens, "for 'it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere . . . '". (*United States* v. *Bess*, 357 U. S. 51, 57).

As to six other items of Federal tax, the making of the attorneys' retainer agreement and the commencement of Capri's use and occupancy of the premises in question antedated the creation of the tax liens by only about a month and a half and the filing of notices of those liens by only about two and a half months. That filing took place on April 26, 1956. There were two more items of Federal tax. One of them became a lien only about three weeks after the making of the retainer agreement and the commencement of the use and occupancy, and the other became a lien about a half year later. A notice of lien as to both was filed on October 31, 1956, a little less than nine months after the making of the retainer agreement and the commencement of the use and occupancy. The con-

demnation award was not made until after all this had taken place. Under the circumstances, it cannot be said, as it was in *Matter of City of New York (U. S. A.-Coblentz)* (5 N Y 2d 300, *supra*), that Coblentz (and Russo) had been retained long before he could have had notice that his client owed withholding tax, or that he "had fully performed" his services before the filing of any notice of lien by the United States.

The doctrine of the *Coblentz* case (*supra*) should be so applied as to split up each of the transfers to the attorneys and the Transit Authority of a portion of the condemnation award. A hearing should be had to determine whether the attorneys had rendered any services up to the time of the filing by the United States on April 26, 1956, and, if so, the value thereof and to determine the value of the use and occupancy of the premises by Capri up to that date. After the lien of the United States for the first four items of tax shall have been satisfied out of the award moneys, in accordance with the conclusion hereinbefore reached, the attorneys and the Transit Authority should be deemed to be entitled to be paid, out of the balance, the amounts so found for them for the period up to April 26, 1956. The amount of the award then remaining should then be applied to the satisfaction of the United States liens for which notices were filed on that day. The next application of the award moneys should be to pay the attorneys for any services found to have been rendered by them and to pay the Transit Authority for use and occupancy, in the period from April 26, 1956 up to the last filing of the United States' liens, on October 31, 1956. The respective amounts for the attorneys and the Transit Authority as to this period should also be determined at the hearing. The said last notice of liens should then be satisfied and, finally, the balance of the attorneys' and the Transit Authority's claims. We do not believe that this splitting of the attorneys' rights is inconsistent with the terms of their retainer agreement. This disposition and the ultimate determination after the hearing are, of course, subject to the possible granting of intervening priority rights to certain judgment creditors and other assignees, whose rights we shall hereafter consider.

Nor do we believe that the attorneys or the Transit Authority would fare better under the theory that their claims had lien status as distinguished from purchaser status. In our opinion, these claims acquired lien status under the Federal standard only when, as and if these claimants gave consideration. To quote from *United States* v. *Security Trust & Sav. Bank* (340 U. S. 47, 50, *supra*) "Numerous contingencies might arise that

would prevent the * * * lien from ever becoming perfected " and therefore the " lien is contingent or inchoate "; " the doctrine of relation back " [relating the giving of consideration back to the time when the inchoate state of the lien began] may not " operate to destroy the realities of the situation " and an inchoate lien is only a " ' caveat of a more perfect lien to come ' " (matter within brackets supplied). An inchoate lien is not, " in the federal sense ", a perfected lien; it is not a lien which may be permitted to defeat the liens of the United States (*United States* v. *Scovil,* 348 U. S. 218, 220, *supra*). Furthermore, the Federal standard also employs the principle, as to priority between conflicting liens, that " ' the first in time is the first in right ' " (*United States* v. *City of New Britain,* 347 U. S. 81, 85, 87).

The positions of the other assignees are distinct from the positions of the attorneys and the Transit Authority in that the other assignees did not establish that they were purchasers, that is, they did not adduce any proof that the consideration given by any of them, assuming it was given, was present consideration. As stated hereinabove, they are respondents Greneman, Ajello, Schifrin, Decco Heating Company, Hoffman Beverages and Vassalo, and the last two also procured judgments against Capri. As against the United States, the assignment to each of these respondents could only have been effected out of what would remain of the award moneys after satisfaction of whatever liens of the United States had attached up to the time of the making of the assignment. In this connection it should be remembered, as we have demonstrated hereinabove, that the liens of the United States attached at the times when assessment lists were received by the Collector of Internal Revenue or when the assessments were made, and not at the later dates when notices of liens were filed. The evidence as to the respective dates when all of these assignments became effective is not satisfactorily shown in the record. These facts should also be determined at the hearing.

We reach the same conclusion with respect to the liens of Hoffman Beverages and Vassalo which they hold by virtue of the proceedings which were taken in pursuance of their judgments. Their rights on the basis of their liens should also be determined at the hearing.

We do not include respondent Russo on his judgment claim and the Industrial Commissioner on his claim of having a judgment. It does not appear that either of them has a lien. In this connection, we advert to the rule, to which we have hereinabove referred, that the Federal standard applies as to whether

lien status and rights are to be accorded. As stated in *United States* v. *Waddill, Holland & Flinn* (323 U. S. 353, 356–357), "it is a matter of federal law as to whether a lien created by state statute is sufficiently specific and perfected to raise questions as to the applicability of the priority given the claims of the United States by an act of Congress." (See, also, *United States* v. *City of New Britain,* 347 U. S. 81, *supra.*) Demonstration that Russo and the Industrial Commissioner do not have liens under the Federal standard need go no further than to point out that, since it has not been shown that execution was issued or that any proceedings supplementary to judgment were instituted on their judgments, their judgments were not liens under the laws of New York (see the references hereinabove made to pertinent sections of the Civil Practice Act and the Labor Law). The fact that a judgment or the docketing of a warrant is not a lien under State law makes it conclusive that it is not a lien under the Federal standard (cf. *United States* v. *Security Trust & Sav. Bank,* 340 U. S. 47, 50, *supra*).

Furthermore, the Industrial Commissioner's judgment claim was but on a docketing based on a mandate which was not in pursuance of a determination of a court of record and, therefore, could in no event be the basis of a lien as recognized under the Federal standard (*United States* v. *Gilbert Associates,* 345 U. S. 361; Federal Tax Regulations, § 301.6323-1, subd. [a], par. [2], cl. [i], sentence [b]).

Finally, as to respondent Caramanica, there was no evidence at all on the basis of which he could be found to have a lien or other right with respect to the award which could be considered as against any of the parties who, in accordance with the views hereinabove stated, have or may be found to have a right of priority over general creditors of Capri.

We make no determination at this time with respect to any questions of priority that might arise on the hearing as amongst the parties other than the United States.

The order should be modified upon the law and the facts in accordance with the views expressed herein. As so modified, the order insofar as appealed from should be affirmed, without costs, and the matter should be remitted to the Special Term for further proceedings not inconsistent with the views expressed herein. The findings of fact insofar as they may be inconsistent herewith should be reversed, and new findings should be made as indicated herein.

UGHETTA, Acting P. J., KLEINFELD, PETTE and BRENNAN, JJ.. concur with CHRIST, J.

Order modified upon the law and the facts in accordance with the views expressed in the opinion herein. As so modified, order insofar as appealed from affirmed, without costs, and matter remitted to the Special Term for further proceedings not inconsistent with the views expressed therein. Findings of fact insofar as they may be inconsistent therewith are reversed. and new findings are made as indicated therein.