Simon J. Liebowitz, J.
On May 19, 1969 the judgment-creditor-petitioners moved pursuant to CPLR 5225 for an order directing the respondent City of New York to deliver to them ■seven checks aggregating $1,906.50 in payment of various meals furnished to jurors and witnesses by the judgment debtor. The City of New York appeared but did not oppose the application. However, no order had been entered on the motion by reason of the ineffective service of the application on the judgment debtor.
The City of New York now moves for a rehearing of the *662 motion, after serving all proper parties, and upon the rehearing for the court to adjudge that the city is entitled to offset taxes due it from the judgment debtor against the moneys due from the City of New York to the judgment debtor. The judgment creditors cross-move for an order directing the City of New York to make payment to them in the sum of $2,030.50, asserting that the said moneys are property of the judgment debtor. The motion for a rehearing is granted and the matter shall be considered de novo.
In May, 1966 the Director of Finance of the 'City of New York issued a sales and business tax deficiency determination against Helen Anderson Coffee Shop, Inc. for $14,951.63. On June 13, 1968 the amount due and owing thereon was the sum of $4,763.32 for sales taxes. On that day Marciante Luncheonette II, Inc. (judgment debtor) bought in bulk all the physical assets of Helen Anderson Coffee Shop, Inc. The City of New York was not notified of the purchase at least 10 days before the proposed sale and before taking possession, as provided for under subdivision c of section N46-11.0 of the Administrative Code of the City of New York. On February 24,1969 the judgment creditors obtained their judgment against the judgment debtor in an amount exceeding $50,000 and on March 5,1969 served a restraining notice of garnishee upon the City of New York. After the institution of the judgment creditors’ motion on May 19, 1969 the City of New York assessed the judgment debtor in the sum of $4,851.58, inclusive of interest. The assessment became final on July 24, 1969 and on July 26, 1969 the City of New York docketed a warrant in the amount of $4,851.58 against the judgment debtor in the judgment docket of Kings County.
"While the judgment debtor operated its business, it furnished during the period of December 3, 1968 to December 20, 1969 meals to jurors and witnesses to the extent of $2,030.50 on the account of the City of New York. For payment thereof, the latter drew eight checks to Penn Delicatessen and Restaurant, the trade name of the judgment debtor. Five of the checks, totaling $968, are being held by the Director of Finance of the City of New York and three of the checks totaling $1,062.50 have been mailed to the judgment debtor and are now in the possession of the judgment creditor. Payment of the three checks has been stopped.
The judgment creditors assert that they have acquired the rights of a priority lien creditor with respect to the indebtedness of the city to the judgment debtor when they served the restraining notice of garnishee upon the City of New York.
*663 Prior to the enactment of the CPLB, it had been determined that the rights of priority could be established by the service of a third-party subpoena in supplementary proceedings issued pursuant to section 781 of the Civil Practice Act. (Matter of Wickwire Spencer Steel Co. v. Kemkit Scientific Corp., 292 N. Y. 139.) However, now, under CPLB 5234 “ in order for a judgment to attain status in ranking of priorities there must either be a levy, an order directing the delivery of property, or the appointment of a receiver. Any other measures taken by the judgment creditor, no matter how diligent, on an absolute or comparative basis, do not suffice to qualify for priority.” (City of New York v. Panzirer, 23 A D 2d 158, 162; Matter of Bankers Trust Co. v. State of New York, 28 A D 2d 272; Fehr v. First Americana Corp., 31 A D 2d 967, app. den. 25 N Y 2d 890.) None of these elemental conditions has been met and accordingly the judgment creditors are not qualified for priority of lien. In fact they had no lien at all against any of the personal property of the debtor (Matter of Goldberg, 43 Misc 2d 1037). On the other hand, the City of New York established its lien by the docketing of a warrant with the County Clerk on July 26, 1969 (Administrative Code of the City of New York, i§ N46-11.0, subd. b).
In answer to the foregoing the judgment creditors assert: (1) the City of New York lulled them into the belief that it had no funds in its possession upon which levy could be made and (2) since the judgment creditors have physical possession of three of the checks, they already had at least some of the assets which could be seized upon an execution directed to the Sheriff, and, accordingly, no execution was required as to these funds.
Considering the first of the above contentions, it appears that after the restraining notice of garnishee was served upon the City of New York an affidavit was issued on March 6, 1969 in behalf of the Bureau of Beceipts and Disbursements in the Department of Finance of the City of New York alleging that the office had no record of any payments then due and payable to the judgment debtor. The judgment creditors seem to urge that under the circumstances, believing that no funds were available, it was useless for them to have an execution delivered to the Sheriff. It nevertheless appears that at the time this proceeding was instituted by the judgment creditors they were aware that the city had drawn seven checks payable to the judgment debtor, the first of which was dated March 19, 1969. (It is to be noted that these checks were all drawn after the affidavit referred to.) They were thus then in the same position *664 as they would have been had the affidavit stated that moneys were due and payable to the judgment debtor and they could have proceeded by execution levy had they so desired prior to the docketing of the city’s warrant.
Turning to the second contention, the judgment creditors fail to show that they have rightfully come into the possession of the three checks. It does not appear that the checks were ever in the possession of the judgment debtor or transferred to the judgment creditors. Neither does it appear that the judgment creditors were agents of the debtors to receive the same and to collect thereon. Accordingly, ño rights to the checks could have been acquired by the judgment creditors without having proceeded with the enforcement of their judgment pursuant to CPLR 5201 et seq.
Accordingly the City of New York became entitled to apply the moneys of its debtor in its possession in extinguishment of the debts due to it (United States v. Munsey Trust Co., 332 U. S. 234) when the debt became due and payable and final in its nature. (Matter of City of New York [Coblentz], 11 A D 2d 240, affd. 12 N Y 2d 1051.)
Lastly, the judgment creditors urge that the City of New York had no power to assess the judgment debtor with the deficiency tax due from Helen Anderson Coffee Shop, Inc., since the sale of the restaurant business, under the Uniform Commercial Code, was not a bulk sale requiring 10 days’ notice to creditors. Assuming arguendo that the judgment creditors have standing to attack the assessment, there is no basis for their objection.
For the purpose of greater enforcement powers in the collection of taxes, subdivision e of section N46-11.0 of the Administrative Code of the City of New York makes all bulk sales involving any stock of merchandise or fixtures subject to imposition of a tax liability and requires the purchaser, at least 10 days prior to taking possession, to notify the Director of Finance of the City of New York of the proposed sale, its price, terms, etc. For failure to comply with these provisions the purchaser “ in addition to being subject to the liabilities and remedies imposed under the provisions of section forty-four of the personal property law [now Uniform Commercial Code, § 6-101 et seq.] shall be personally liable for the payment to the city of any such taxes theretofore or thereafter determined to be due to the city from the seller, transferrer or assignor, and such liability may be assessed and enforced in the same manner as the liability for tax under this title.”
It is thus evident that the liabilities and remedies here are in addition to those provided for in the Uniform Commercial Code. *665 Even if the Uniform Commercial Code may not be applicable to the sale of a restaurant business, the provisions in the Administrative Code would necessarily include it. Nothing in the Uniform Commercial Code affects or limits the city’s rights under the Administrative Code.
Accordingly, the motion of the City of New York is granted and the motion and cross motion of the judgment creditors are denied.