In the Matter of **THRIFTWAY AUTO RENTAL CORP.**, Bankrupt.

**UNITED STATES of America,**
**Appellant,**

v.

**Robert P. HERZOG, Trustee, et al.,**
**Appellees.**

No. 321, Docket 71–1569.

United States Court of Appeals,
Second Circuit.

Argued Dec. 2, 1971.

Decided March 8, 1972.

Susan Freiman, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y.; Alan B. Morrison, Asst. U. S. Atty., on the brief) for appellants.

Cornelius F. Roche, New York City (J. Lee Rankin, Corp. Counsel of the City of New York; Stanley Buchsbaum and Samuel J. Warms, New York City, on the brief), for appellee City of New York.

Before LUMBARD, WATERMAN and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

The United States appeals from an unreported Memorandum Decision of the United States District Court for the Southern District of New York, Thomas F. Croake, J., reversing a decision of Edward J. Ryan, Referee in Bankruptcy, and holding that New York City's tax lien of $16,307.33 upon the property of the bankrupt, Thriftway Auto Rental Corp., is entitled to priority over two federal tax liens of $9,851.48 and $3,934.86.[1] The assets of the bankrupt, consisting entirely of personal property, are worth only $8,638.44. Therefore, the knotty question of priority is, lamentably, worth litigating.

The question arises in the following context: On November 6, 1964, the

---

1. The City has conceded that a third federal tax lien in a small amount arose before the City's contested lien and is entitled to priority.

City's Director of Finance (now Finance Administrator) issued a tax warrant against Thriftway for certain unpaid sales, business and occupancy taxes. On that same day, a copy of the warrant was filed in the Office of the Clerk of New York County and the amount of the warrant was duly entered in the judgment docket. Although the City apparently collected $1,000 from Thriftway on the amount of the warrant, the City did not levy or otherwise enforce its warrant. Then, on November 18, 1964, and again on January 13, 1965, the United States made its tax assessments, and notices of the assessments were duly filed. The petition in bankruptcy was filed shortly thereafter, on February 15, 1965.

All parties agree that the federal liens, which arose under 26 U.S.C. § 6321, are valid against the trustee.[2] What remains, then, are two issues:

whether as a matter of state law the docketing of the City's warrant created a lien, and, if so, whether the lien is entitled to priority over the subsequent federal liens under the controlling federal standards. Referee Ryan held that the docketing alone, without subsequent levy, created no lien at all for the City. On the City's petition for review, Judge Croake disagreed, and further found that the lien created is entitled to priority. Manifestly, neither issue is simple, but we agree with Judge Croake and affirm.

## I

■ Whether a lien is created by the docketing of municipal tax warrants is a matter of local law. The pertinent section of New York City's Administrative Code is set out in the margin.[3] The text of this section has apparently remained

---

2. The trustee is not a party to this appeal and is not interested in its outcome since both the City and the United States have claims in excess of the bankrupt's assets and both concede that their liens are subject to the prior payment of administrative expenses and wage claims. See 11 U.S.C. § 107(c) (3).

   The Industrial Commissioner of the State of New York, and the New York State Tax Commission, both alleging to be priority claimants, offered token opposition to the City's motion before the Referee, but did not appeal from the district court's ruling.

3. 5 N.Y. City Charter and Administrative Code § N46–11.0(b) (1971) provides:
   [1] As an additional or alternate remedy, the director of finance may issue a warrant, directed to the city sheriff commanding him to levy upon and sell the real and personal property of the vendor or officer of a corporate vendor or purchaser or other person liable for the tax which may be found within the city, for the payment of the amount thereof, with any penalties and interest, and the costs of executing the warrant, and to return such warrant to the director of finance and to pay to him the money collected by virtue thereof within sixty days after the receipt of such warrant. [2] The city sheriff shall within five days after the receipt of the warrant file with the county clerk a copy thereof, and thereupon such clerk shall enter in

the judgment docket the name of the person mentioned in the warrant and the amount of the tax, penalties and interest for which the warrant is issued and the date when such copy is filed. [3] *Thereupon the amount of such warrant so docketed shall become a lien upon the title to the interest in real and personal property of the person against whom the warrant is issued.* [4] *The city sheriff shall then proceed upon the warrant in the same manner, and with like effect, as that provided by law in respect to executions issued against property upon judgments of a court of record and for services in executing the warrant he shall be entitled to the same fees, which he may collect in the same manner.* [5] In the discretion of the director of finance a warrant of like terms, force and effect may be issued and directed to any officer or employee of the department of finance, and in the execution thereof such officer or employee shall have all the powers conferred by law upon sheriffs, but shall be entitled to no fee or compensation in excess of the actual expenses paid in the performance of such duty. [6] If a warrant is returned not satisfied in full, the director of finance may from time to time issue new warrants and shall also have the same remedies to enforce the amount due thereunder as if the city had recovered judgment therefor and execution thereon had been re-

substantially unchanged since first enacted and age has failed to improve its clarity. The City directs our attention particularly to the third sentence, which declares that when the county clerk enters pertinent information regarding the tax warrant in the judgment docket "the amount of such warrant so docketed shall become a lien upon the title to the interest in real and personal property of the person against whom the warrant is issued." The City maintains that by virtue of this provision it acquired a lien upon Thriftway's property as of November 6, 1964, when the warrant was docketed, and that this lien, entitled to recognition under section 67b of the Bankruptcy Act, 11 U.S.C. § 107(b), is superior to the subsequent federal liens.

The United States, on the other hand, argues that the City's reading of the "seemingly clear language" of the third sentence is misleading, and then directs our attention to the sentence immediately following, which provides that after the warrant is docketed "[t]he city sheriff shall then proceed upon the warrant in the same manner and with like effect, as that provided by law in respect to executions issued against property upon judgments of a court of record. . . ." The United States maintains that this sentence incorporates into the Administrative Code Article 52 of New York's Civil Practice Law and Rules (C PLR) which prescribes the effect of executions on personal judgments generally. Citing CPLR §§ 5202, 5230(c), the United States argues that under the CPLR delivery of an execution to a sheriff by a judgment creditor gives rise to a lien upon personal property, but only for a limited period of time after which the lien expires. The Government would have us conclude that since, in the present case, no actual levy was made and no additional executions or "new warrants" were issued, whatever lien the City may have had by reason of the third sentence of the Code expired prior to the time of the bankruptcy petition by reason of the fourth sentence.

Although there is force to this suggested reading, it means that the docketing of a City tax warrant is treated only as the docketing of a private judgment. Under the CPLR, the latter creates no lien at all upon personal property, but merely enables a judgment creditor to obtain a lien through further action, e. g., as against a "transferee" by delivery of an execution, see CPLR § 5202; as against another judgment creditor by levy, see CPLR § 5234; City of New York v. Panzirer, 23 A.D.2d 158, 259 N.Y.S.2d 284, 288 (1st Dep't 1965). To be sure, sentence four of the Code section intends that docketed warrants *may* be treated as docketed judgments, enabling the City, for example, to serve a third-party information subpoena and restraining order as may any other "judgment creditor." See City of New York v. Bedford Bar & Grill, Inc., 285 App. Div. 1202, 140 N.Y.S.2d 762 (3d Dep't 1955), aff'd, 2 N.Y.2d 429, 161 N.Y.S.2d 67, 141 N.E.2d 575 (1957); CPLR §§ 5222, 5224. But the text of the Code section, particularly the third sentence, suggests that the City did not limit its docketed warrants to such treatment. Indeed, the district court concluded that the tax warrant provided for by the Administrative Code serves at least "three functions: of creating a lien, of giving notice of the lien, and of operating as an execution." The court added:

> The intent of the draftsmen appears to have been that only as an execution

---

turned unsatisfied. [Enumeration and emphasis added.]
Technically, this section applies to the warrant only insofar as it represents assessed sales taxes. However, the provision relating to the assessed business taxes is identical. See 5 N.Y. City Charter and Administrative Code § B46–10.0(b) (1971). Although the provision relating to the occupancy taxes differs, see *Id.* at § E46–13.0(a), the parties had not argued that different treatment is required. Apparently their position is influenced by the small amount of the occupancy taxes here involved, less than $100 including penalties which are unrecoverable in bankruptcy proceedings. 11 U.S.C. § 107(c) (4).

could the warrant become *functus officio*.

On the basis of the text alone, then, we think that the scales tip slightly in favor of the City's suggested reading of the Administrative Code.

The City's case is strongly buttressed by decisions in the New York state courts applying the Code. See Argiriou & Finkel v. Marciante Luncheonette II, Inc., 64 Misc.2d 660, 315 N.Y.S.2d 448 (Sup.Ct.1970); In re De Kalb Ave. Reconstr., 11 A.D.2d 240, 205 N.Y.S.2d 125 (2d Dep't 1960), aff'd, 12 N.Y.2d 1051, 239 N.Y.S.2d 880, 190 N.E.2d 240 (1963). In *De Kalb,* one of the issues raised was whether the City could push back the time of the perfection of its lien for sales and business taxes from the date the warrant was docketed to the tax assessment dates, and thus obtain priority over intervening federal tax liens. The court held in favor of the federal government, but clearly indicated that the City's lien was perfected when its warrant was docketed. 205 N.Y.S.2d at 133. More recently, in *Marciante Luncheonette, supra,* a question of priority arose between a judgment creditor that had obtained a restraining order and the City, which—subsequent to that order—docketed its sales and business tax warrant. The court held that the judgment creditor "had no lien at all against any of the personal property of the debtor," and that "[o]n the other hand, the City . . . established its lien by the docketing of a warrant with the County Clerk. . . ." 315 N.Y.S.2d at 452. The decisions of this court dealing with the Administrative Code similarly lend support to the City's position. See City of New York v. Hall, 139 F.2d 935 (2d Cir. 1944); In re Saratoga Paint Co., 31 F.Supp. 514 (E.D.N.Y.1940), aff'd sub nom. Davis v. City of New York, 119 F.

2d 559 (2d Cir. 1941) (*per curiam*); but see In re L. Gandolfi & Co., 42 F. Supp. 706, 708 (S.D.N.Y. 1940). The *Hall* and *Davis* decisions are perhaps distinguishable on narrow grounds, but they nonetheless suggest that in the past this court has treated the docketing of a tax warrant by the City as "impos[ing] a lien upon all the property of the bankrupt." Davis, *supra,* 119 F.2d at 560. See also the decision of Referee Asa S. Herzog in In re Lum's 52nd Street Corp., Bankrupt (S.D.N.Y.1963) (Dkt No. 61–B–194), which squarely held, despite strenuous arguments of the United States to the contrary, that the docketing of a warrant for sales taxes creates a lien under the Administrative Code.[4]

The United States calls our attention to Ersa, Inc. v. Dudley, 234 F.2d 178 (3d Cir. 1956), in which the Third Circuit reached a contrary result in applying a Pennsylvania statute in some respects similar to the City's Code. See 234 F.2d at 181. Aside from highlighting the type of ambiguity that "drips" from these hoary statutes, *Hall, supra,* 139 F. 2d at 936 (Frank, J.), that decision has little relevance here, since the court merely followed an explicit holding of the Pennsylvania Supreme Court which gave its own statute a narrow construction. No comparable New York state court holding has been presented to us, and, as already indicated, what state authority there is points decidedly in the opposite direction.[5]

At oral argument the United States contended that by adopting the City's reading of the Administrative Code this court would in effect create a municipal tax lien that would be forever enforceable, while enforcement of the federal government's tax liens is limited to six years from the date of assessment. See 26 U.S.C. § 6502(a). Such

---

4. The United States did not petition for review of the decision, which is unreported.

5. Reliance by the United States on City of New York v. Panzirer, *supra,* is misplaced. In that case, although the City apparently docketed a tax warrant, it relied on its status as a judgment creditor that had served a third-party information subpoena and restraining notice, rather than on the Administrative Code provisions. Those provisions were not mentioned by the court.

an anomalous result, it was suggested, would encourage slothful municipal administrators. But whatever the theoretical life expectancy of the City's lien may be, we are not convinced that as a practical matter its duration will be unduly burdensome. First, as the district court noted, failure to levy on personal property prior to bankruptcy will result in subordination of the City's lien to administrative expenses and wage claims, see 11 U.S.C. § 107(c) (3); cf. United States v. Randall, 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971). Also, tax penalties will be rendered unrecoverable, see 11 U.S.C. § 107(c) (4). Secondly, state (as well as federal) liens based upon taxes "legally due and owing" for more than three years prior to bankruptcy become dischargeable—at least as against property acquired after the bankruptcy. See 11 U.S.C. § 35(a); United States v. Sanabria, 424 F.2d 1121 (7th Cir. 1970); Plumb, Federal Liens and Priorities—Agenda for the Next Decade I, 77 Yale L.J. 228, 270 (1967) [Plumb I]. Such "stale" tax liens also lose their priority status under 11 U.S. C. § 104(a) (4). See Plumb I at 263. Finally, the ultimate remaining penalty on a lethargic municipality for its delay is the "ancient federal statute," still commonly termed Section 3466 of the Revised Statutes, 31 U.S.C. § 191. This statute applies in certain cases of insolvency other than straight bankruptcy and provides that "the debts due the United States shall be first satisfied." See Plumb I at 237–39.

## II

◼ Under state law, then, the docketing of the City's warrant created a statutory lien on Thriftway's property which had not expired at the date of bankruptcy.[6] The question remains, however, whether—as a matter of federal law—the City's lien is entitled to priority over the subsequent federal liens. Generally, of course, the rule of "first in time, first in right" would dictate that the City prevail. See United States v. City of New Britain, Conn., 347 U.S. 81, 85–86, 74 S.Ct. 367, 98 L.Ed. 520 (1954). But the United States contends that the priority of the City's lien should not be recognized because the lien is not "choate." According to the United States, in order to obtain a "choate" lien it is necessary for the City "to take possession of property or to have a lien that relates only to specific property. . . ."[7] The argument attempts to resurrect the double standard in determining the "choateness" of state and federal liens. That standard was finally repudiated by a unanimous Supreme Court in United States v. Vermont, 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964), aff'g 317 F.2d 446 (2d Cir. 1963). See generally, Plumb, Federal Liens and Priorities—Agenda for the Next Decade III, 77 Yale L.J. 1104, 1104–1107 (1968). It is true, as the United States points out, that the *Vermont* decision involved a solvent taxpayer and a state statute whose language was almost identical to the federal tax lien provisions, 26 U.S.C. §§ 6321, 6322. But the decision simply cannot be so facilely confined. The Court explicitly held that an "antecedent state lien . . . is sufficiently choate" if it "meets the test laid down in [United States v. City of] *New Britain* [347 U. S. 81, 84, 74 S.Ct. 367, 98 L.Ed. 520

---

6. This conclusion effectively answers the alternative argument of the United States that if the City has a lien, it is nevertheless invalid against the trustee under § 67c(1) (B) of the Bankruptcy Act, 11 U.S.C. § 107(c) (1) (B). That argument turns on treating the docketed warrant as "equivalent to a judgment lien," Appellant's brief at 12. Absent such treatment, no authority has been cited to us and we have found none, which would suggest that the lien created in favor of the City is invalid against a bona fide purchaser. Federal tax liens, once filed, are good against such a purchaser, see 4 Collier On Bankruptcy § 67.281 [2.20] (14th ed. 1969); cf. United States v. Speers, 382 U.S. 266, 276, 86 S.Ct. 411, 15 L.Ed.2d 314 (1965). Without authority, we would not feel free to treat differently the City's lien, which is created by docketing.

7. Appellant's brief at 12–13.

(1954)] that 'the identity of the lienor, the property subject to the lien, and the amount of the lien are established.'" 377 U.S. at 358, 84 S.Ct. at 1271. In the present case, New York City's lien meets this test [8] and would therefore appear to be entitled to priority. As we indicated in a previous opinion in this area: "Doubtless we shall soon be instructed if we are wrong." United States v. Vermont, *supra,* 317 F.2d at 454.

Judgment affirmed.

---

8. We note also that the City's lien is summarily enforceable by administrative action. See 377 U.S. at 359 & n. 12, 84 S.Ct. 1267, 12 L.Ed.2d 370.