CHAMBERS, Circuit Judge:
These cases present a single issue of law — that of the relative priority of Internal Revenue Service liens, which arise upon assessment under 26 U.S.C. § 6322, and California unemployment tax liens, which are said to arise when the delinquent tax return is filed, under Section 1703 of the California Unemployment Insurance Code. In each case, the California taxpayer filed the State tax return after the date it was due. Thereafter, the Internal Revenue Service assessment was made and notice of federal tax lien was recorded with the county recorder. At some later date, California filed its notice of State tax lien and recorded it with the county recorder.
In Professional Escrow Services v. I.R.S. (a State interpleader action that was removed to District Court), the district judge held that the California lien was sufficiently choate to take priority over the federal lien. In In re Priest (an adversary proceeding in Bankruptcy Court)[1] the bankruptcy judge would have recognized the priority of the federal lien, but he considered himself estopped by the judgment of the district court in Professional Escrow Services, and thus granted judgment for the State.[2]
Under United States v. New Britain, 347 U.S. 81, 84-85, 74 S.Ct. 367, 369-70, 98 L.Ed. 520 (1954), the priority of statutory liens is determined by the principle of “the *1328 first in time is the first in right,” but the lien that is competing with the federal lien must be perfected:
... in the sense that there is nothing more to be done to have a choate lien— when the identity of the lienor, the property subject to the lien, and the amount of the lien are established.
The State statute in question is Section 1703 of the California Unemployment Insurance Code which, immediately prior to its amendment effective in 1979, stated that a tax lien arose when the unemployment tax return was “due and payable.” This was defined as “the date a return is required to be filed, without regard to any extension of time, without payment of the amount due .... ” Mere passage of the due date, under the statute as it was then worded, was intended to give rise to an enforceable lien on all of the taxpayer’s property.
Section 1703, as amended in 1979, stated:
(a) If any employing unit or other person fails to pay any amount imposed under this division at the time that it becomes due and payable, the amount thereof, including penalties and interest, together with any costs in addition thereto, shall thereupon be a perfected and enforceable state tax lien ...
(b) For the purposes of this section, amounts are “due and payable” on the following dates:
(1) For amounts disclosed on a return received by the director before the date the return is delinquent, the date the return would have been delinquent;
(2) For amounts disclosed on a return filed on or after the date the return is delinquent, the date the return is received by the director;
(3) For all other amounts, the date the assessment is final.
California concedes, as it must, that the wording of the pre-1979 statute is insufficient to create a choate lien under the rule of New Britain. The mere passing of the date when the tax return should have been filed does not identify the lienor, the property, or the amount due. It is the State’s argument, however, that in both cases now before us its liens became choate at the moment the taxpayers actually filed their delinquent returns. Thus, regardless of the fact that one or more of the liens here in question was governed by the pre-1979 wording of Section 1703, the State is putting into issue (as to all of the liens in these cases) the standard of choateness set forth in the California statute, as it was amended in 1979.
California characterizes the effect of filing the delinquent State return as “self assessment” and contends that this admission of liability by the taxpayer fulfills the New Britain requirements for choateness. The district judge in Professional Escrow Services agreed with the State and concluded that there was “assessment on the date of receipt of the tax return.” It was his view that the identity of the lienor (the State) was now fixed, the property subject to the lien (all of the taxpayer’s property, according to the statute) was fixed, and the amount of the lien (the sum admitted to be owing by the taxpayer) was fixed. Relying on Thriftway Auto Rental Corp. v. Herzog, 457 F.2d 409 (2d Cir.1972), the district judge stressed that the issue was whether the State statute gave rise to an enforceable lien, and not whether the State statute was sufficiently similar to the federal statute.
The Internal Revenue Service has not argued, on these appeals, that the State lien statute must be identical with the federal lien statute. The Service does argue that there cannot be a choate lien, under the New Britain requirement of choateness, without some activity by the State to fix the taxpayer’s liability. The Service argues that Thriftway is not support for California’s claim that its liens are choate, correctly noting that in Thriftway there had been an assessment and a warrant had been issued with the county clerk. Thriftway was not a case, such as those under consideration here, where the State claims a choate lien may arise without any activity, whatsoever, on its part.
*1329 We are persuaded that Section 1703 (b)(2) (1979), cannot be deemed to create liens that are sufficiently choate under the test of New Britain. We agree with the bankruptcy judge in Priest that “a lien cannot arise prior to the taking of any administrative steps to establish the lien.” The mere receipt of a delinquent State tax return is too vague and indefinite a standard by which to establish a lien that is capable of taking priority over a federal lien. The uncertainty of postal delivery, the uncertainty of the length of time it might remain on someone’s desk, and the uncertainty of the time that might be consumed in processing the return through the administrative machinery, are realities to be considered. Significant delays might well occur before there was even any acknowledgment of the director’s receipt of the delinquent return, or any administrative act by which the State acknowledged in its own accounts that the taxpayer is liable for unpaid taxes, or the precise amount of that delinquency, and the amount of penalty, interest and fees.
The lien created by Section 1703(a) is for the amount of the tax delinquency “including penalties and interest, together with any costs in addition thereto.” Under the rule of New Britain a lien is not choate unless “there is nothing more to be done” and “the amount of the lien” is established, 374 U.S. at 84,74 S.Ct. at 369. In the cases before us the total amount of the lien could not be known until the Director computed the interest, penalties and fees. These amounts were not established when the return is received by the Director; they were established thereafter. On the records before us, it appears that the taxpayers had no advice from the State, as to the computation of tax liability, interest, penalties, and fees, until the notices of tax lien were filed.
Clearly, the State lien statute need not be identical with the federal statutory scheme. United States v. Vermont, 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964). But for there to be priority over the federal lien, the State lien statute must encompass a scheme that provides sufficient choateness under the rationale and rule of New Britain. Section 1703 of the California Unemployment Insurance Code as it was worded prior to 1970, and Section 1703(b)(2) of the 1979 amendment, provide insufficient choateness to permit the State lien to take priority over the federal lien.
Reversed and remanded with directions to enter judgment in favor of the Internal Revenue Service in both cases.

. We have jurisdiction over the appeal from the Bankruptcy Court despite Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), as the holding in that decision is prospective only and the decision in Priest predated Northern Pipeline. See Buckley v. Valeo, 424 U.S. 1, 142, 96 S.Ct. 612, 693, 46 L.Ed.2d 659 (1976).

. The parties dispute the validity of the bankruptcy judge’s conclusion that he was collaterally estopped by the judgment in Professional Escrow. As both cases are consolidated here, we will address the underlying issue presented by both. As indicated infra we rely in part on the bankruptcy judge’s reasoning in coming to our decision in these cases.